David A. COPUS, Plaintiff,

v.

Weldon ROUGEAU et al., Defendants.

Civ. A. No. 79–3801.

United States District Court,
District of Columbia.

Dec. 22, 1980.

David A. Copus, Washington, D. C., pro se.

Nathan Dodell, Asst. U. S. Atty., Washington, D. C., Richard T. Galgay, U. S. Dept. of Labor, Washington, D. C., for defendants.

### MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This case is before the Court on the defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. Under the Freedom of Information Act, 5 U.S.C. § 552 (1976) (FOIA), David A. Copus (Copus), an attorney, seeks to compel the United States Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) to permit him to inspect and copy OFCCP

documents reflecting the forecast of government contractors to be reviewed under Executive Order 11246 for the first quarter of fiscal year 1980 in the Chicago OFCCP Region. The defendant Department of Labor (DOL) is responsible for enforcing Executive Order 11246, *reprinted in* 42 U.S.C. § 2000e (note) (1976 and Supp. II. 1978) (E.O. 11246), which prohibits discrimination by federal contractors and requires them to implement written affirmative action plans. The Secretary of Labor has delegated the authority for the enforcement of E.O. 11246 to the OFCCP, of which defendant Rougeau is the Director. Examination of the record compels the conclusion that no material issues of fact remain in dispute, that the documents are exempt from disclosure under exemption seven of FOIA, 5 U.S.C. § 552(b)(7)(A) (1976), and that the defendants are therefore entitled to summary judgment.

On August 28, 1979, plaintiff sought from the Chicago Regional OFCCP office "a copy of all forecasts of contractors to be reviewed in FY 1980." Receiving no response, he treated the request as constructively denied and filed an appeal. One month later, the Chicago office replied in writing that it would grant Copus access to the requested materials upon remittance of the search and copying charges. Meanwhile, the DOL acknowledged the appeal and promised an expeditious disposition. Copus promptly forwarded appropriate monies to the Chicago office.

Having not received the requested documents, plaintiff contacted the Assistant Regional Administrator (ARA) in Chicago, who assured him that the materials would be forwarded promptly. Four days later, Copus learned that the requested forecasts would not be provided. This action was then instituted. Five weeks thereafter, the Solicitor of Labor informed the plaintiff that his administrative appeal had been denied pursuant to, *inter alia*, Exemptions 5 and 7 of the FOIA, 5 U.S.C. § 552(b)(5) and (b)(7) and that the forecasts would not be released. The action was then ripe for re-

view in the District Court. *See* 5 U.S.C. § 552(a)(4)(B) (1976).[1]

The OFCCP is charged with the enforcement of E.O. 11246, amended by E.O. 11375, which prohibits discrimination in employment by federal contractors on the bases of race, color, national origin, religion, or sex. Initially issued by President Lyndon B. Johnson on September 24, 1965, it also requires entities that contract with the federal government to formulate affirmative action plans to insure that no applicant or employee is discriminated against in the context of employment. Sections 202(5) and 203 of E.O. 11246 require contractors to keep and to file records with the Department documenting their employment practices. Based on a review of these records and other factors, the OFCCP determines through its Area Directors and its ARAs whether a review of a contractor's compliance with E.O. 11246 is warranted. When OFCCP concludes that such a review is justified, the contractor is given thirty (30) days notice that a review will occur, after which the contractor must submit its affirmative action plan and other supporting evidence of compliance. OFCCP may decide after examining the material to conduct an onsite evaluation. *See* 41 C.F.R. § 60–60.2(a), 41 C.F.R. § 60–60.3 (1979).[2] If the OFCCP concludes that the contractor is not in compliance with E.O. 11246, then it may commence proceedings to suspend, terminate, or cancel contracts, or to bar future contract awards to the non-complying contractor. *See* 41 C.F.R. § 60–1.26 (1979), 41 C.F.R. § 60–30 (1979).

Plaintiff seeks a document known as the Quarterly Compliance Review Forecast ("QCRF"). The QCRF is based on reports and recommendations of the respective ARAs to the National Office OFCCP policymakers that compliance reviews of certain contractors *may* be appropriate for the upcoming fiscal quarter in his or her region. In turn, the ARA has had input from the OFCCP Area Directors. Rougeau Aff. ¶ 8. The QCRFs were first implemented in the fourth quarter of fiscal year 1979 so that the OFCCP could more efficiently and consistently develop a coordinated national, rather than regional, policy concerning contract reviews under E.O. 11246. Plaintiff asks this Court to mandate that the Chicago and the Kansas City Regional Offices disclose their QCRFs for the first quarter of fiscal 1980.[3]

The defendant has moved for summary judgment arguing that disclosure is neither required under the Department of Labor's regulations nor lawful under exemptions 5 or 7 of the FOIA. Plaintiff resists summary judgment as premature, insisting that material factual issues must first be resolved, including determinations as to whether the release would be in the public interest, whether the QCRF actually sets a schedule of audits, whether disclosure of the QCRF would impede the functions of that Office, and whether past law enforcement efforts actually have been affected by disclosure of the QCRF. Each invocation for nondisclosure is separately examined below.

The defendants claim that disclosure is not compelled by DOL regulations which provide for disclosure of certain documents of the Office relating to the enforcement of E.O. 11246. Those regulations, located at 41 C.F.R. § 60–40.2 (1979), as relevant, are as follows:

---

1. Plaintiff's associate, John C. Fox, made a similar request to the Kansas City office on September 19, 1979. The Regional office promptly responded seeking a remittance to pay for search time and copying charges which Mr. Fox provided. On October 29, 1979, the Regional Administrator wrote Mr. Copus claiming that the requested material was exempt and refunding the money. Plaintiff's appeal to the Solicitor of Labor resulted in a denial of the request for the Kansas City forecast as well as for the Chicago forecast.

2. These audits are known as "scheduled" audits. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 2–3.

3. In August 1979 plaintiff requested and received from the eight other OFCCP regional offices the same document. *See* Rougeau Aff. ¶ 7. The OFCCP Director asserts now that the regional compliance with plaintiff's request was erroneous.

(a) Upon the request of any person for identifiable records obtained or generated pursuant to E.O. 11246 (as amended) such records shall be made available for inspection and copying, notwithstanding the applicability of the exemption from mandatory disclosure set forth in [FOIA], if it is determined that the requested inspection or copying furthers the public interest and does not impede any functions of the OFCCP, except in the case of records disclosure of which is prohibited by law.

(b) Consistent with the above, all contract compliance documents within the custody of the OFCCP shall be disclosed upon request unless specifically prohibited by law or as limited elsewhere herein. The types of documents which if in the custody of the OFCCP must be disclosed include, but are not limited to, the following:

.    .    .    .    .

(5) Dates and times of scheduled compliance reviews.

■ Whether disclosure of the QCRF is mandated by departmental regulations is answered by *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), where the very regulations at issue here were considered and held not binding on the OFCCP. Mr. Justice Rehnquist wrote,

> "We need not decide whether these regulations are properly characterized 'interpretative rules.' It is enough that such regulations are not properly promulgated as substantive rules, and therefore not the product of procedures which Congress prescribed as necessary prerequisites to giving a regulation the binding effect of law."

*Id.* at 315, 99 S.Ct. at 1724.

■ Even were the regulations in some manner deemed binding on OFCCP, they would not in any event require disclosure. The QCRF contains recommendations from the Regional Offices concerning potential compliance reviews that may be appropriate. Transmittal of the QCRF to the National Office for its ultimate decision is designed to insure that reviews are undertaken on consistent grounds and to attempt to improve the efficiency of the reviewing process. *See* Rougeau Aff. ¶¶ 8–9. The document does not schedule a review for a contractor at a certain date or time, see Rougeau Supp. Aff. ¶ 4, and cannot then be construed as a "schedule" under 41 C.F.R. § 60–40.2(b)(5) (1979) compelling disclosure. No furtherance of public interest can be discerned but it has been demonstrated that the efforts of OFCCP to enforce E.O. 11246 could be hampered by premature disclosure of its suggested activities.

■ Has exemption five of the FOIA exempted the forecasts from disclosure because they were, as defendants argue, predecisional and deliberative? *See* 5 U.S.C. § 552(b)(5) (1976), permitting an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

The QCRF is clearly predecisional since it constitutes only a regional recommendation of reviews for the National Office which are there evaluated for consistency in relation to the reviews recommended by other regions, to prior reviews, and to the agency's "overall policy objectives." When a Regional Office's compliance review recommendations are found wanting under these parameters, as some have been, the ARAs "have been directed to conform their forecasts accordingly." Rougeau Aff. ¶ 9. It is also evident that disclosure of predecisional materials will discourage the candid exploration and "give-and-take" essential to agency decision-making. Nonetheless, without further illumination of the OFCCP decision process it would be inappropriate to apply exemption five to this record as now constituted. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138, 95 S.Ct. 1504, 1510, 44 L.Ed.2d 29 (1975); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980) ("[T]he agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process.")

Reliance on this exemption alone would not justify summary judgment but, in any event, becomes unnecessary to the ultimate decision in light of the determination below.

Exemption seven protects from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings...." 5 U.S.C. § 552(b)(7) (1976). The defendants argue that the QCRF is a document prepared by the Regional Offices for law enforcement purposes because it is an essential component in the decision of the National Office to seek a compliance audit. Disclosure of the document would hamper the Office's efforts to enforce antidiscrimination laws in federal contractors' employment practices, by giving premature notice to those who face potential audits who could accelerate their efforts to avoid findings of non-compliance. The affidavit of Weldon Rougeau indicates that, in the agency's experience, the 30-days' notice currently required under OFCCP regulations is more than enough time for the contractor to simulate "paper compliance" with E.O. 11246. See Rougeau Aff. ¶ 11.

■ Is then the QCRF an investigatory record compiled for law enforcement purposes? Before a Regional Office may proceed with an audit of a contractor's compliance with federal antidiscrimination laws, it must receive approval from the National Office. This approval is conditioned on the National Office receiving the QCRF from the Regional Director and coordinating it for consistency with the recommendations from other regions. The forecast is therefore a necessary condition to the initiation of enforcement proceedings, or in this case, audits. See Rougeau Aff. ¶ 9. Moreover, the QCRF not only is a compendium of the names of potential targets for compliance audits, but it also is a vital tool for the National Office to arrive at consistent enforcement policies. As the Director of OFCCP states:

> The reason for developing these investigative records was to enable OFCCP, in terms of carrying out its enforcement

program, to better regulate the compliance review activities of the various regional offices by coordinating their activities in a manner consistent with each other and with national program objectives. That is, it was developed to enhance the agency's ability to meet its overall program objectives by more efficiently conducting its compliance review program.

*Id.* It is evident that the QCRF is part of an investigative record aimed at enforcement proceedings to effectuate the purpose of E.O. 11246's proscription of employment discrimination and to assure compliance in this regard by federal contractors; it is not simply part of a routine administrative fact-gathering function. *See Hunt v. Commodity Futures Trading Commission*, 484 F.Supp. 47, 50 (D.D.C.1979); *Lamont v. Department of Justice*, 475 F.Supp. 761, 773 (S.D.N.Y.1979). *See also Center for National Policy Review on Race and Urban Issues v. Weinberger*, 502 F.2d 370, 373–74 (D.C.Cir.1974).

■ Nonetheless, the inquiry under the statute does not end once the QCRF is deemed a record compiled for purposes of law enforcement. Will disclosure of the records interfere with enforcement proceedings? The plaintiff's position that material factual questions remain before this issue can be determined is premised on his insistence that the Office must prove that disclosure of the QCRF has, in the past, actually affected law enforcement efforts by the varying Regional Offices where disclosure has occurred. *N. L. R. B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), is wholly contrary to plaintiff's position. The Supreme Court there reversed the holding of the Fifth Circuit that the government must show on a case-by-case basis that disclosure would interfere with enforcement proceedings. "[W]e think [the Fifth Circuit] erred," Mr. Justice Marshall wrote for the Court, "in concluding that no generic determinations of likely interference can ever be made." *Id.* at 236, 98 S.Ct. at 2323. This Court thus may determine the *likely effect*

*of disclosure in a common sense, generic manner,* and the defendant need not show specific examples where disclosure has harmed OFCCP enforcement efforts. The agency must show instead that disclosure of the forecasts "would *generally* 'interfere with enforcement proceedings.'" (emphasis added) *Id.* (quoting exemption 7(A)).

Guidance on the showing needed to prevent disclosure is further provided by *Robbins Tire* where plaintiffs sought written statements of witnesses who were going to testify at a N.L.R.B. unfair labor practice hearing. Despite the broad policy of the FOIA to promote disclosure, *see Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), the Court held that such statements were exempt from disclosure. *See* 437 U.S. at 242–3, 98 S.Ct. at 2326–2327. The Court indicated concern over the likely intimidation of witnesses, the possibility that in the future, people may be deterred from cooperating with the Board, and the opportunity for suspected violators to avoid enforcement.

In the instant dispute, the defendants have met their burden to show that disclosure would interfere with enforcement proceedings against contractors thought to be discriminating against employees or applicants. It is the experience of the OFCCP that even in the thirty days that a contractor currently has to prepare for an audit, contractors have manipulated records and taken other action to prevent a finding of non-compliance. Rougeau Aff. ¶ 11. Its appearance rarely etched in bold lines, discrimination often exists in manner disguised and difficult of detection.[4] The Office notes through the Rougeau affidavits that those contractors who attempt to avoid the enforcement process, albeit not a majority of government contractors, would have a greater opportunity to compromise the investigation and conceal their non-compliance with the advance notice afforded by the disclosure of the QCRF, which is sub-

mitted to the National Office at least forty-five (45) days prior to the beginning of each quarter. *See* Rougeau Aff. ¶¶ 9, 12. Furthermore, as with any law enforcement operation, deterrence of illegal conduct is as much an objective as is detection and punishment. Signaling a possible audit could reduce the deterrent effect of enforcement proceedings for those not on the forecast, discouraging them from voluntary compliance; *even though the QCRFs are not final decisions* of who will be audited, it is obvious that the absence of a contractor's name on the forecast decreases significantly the probability of an audit. Rougeau Supp. Aff. ¶¶ 2–3; Rougeau Aff. ¶ 13; Defendant's Response to Request for Admission No. 41. Although disclosure of the QCRF does not present a problem as imminent or boldly focused as witness intimidation, such as in *Robbins Tire,* the likely impact of releasing the document on OFCCP enforcement activities is similarly persuasive to justify application of exemption 7. As the Court in *Robbins Tire* noted, "[E]ven without intimidation or harrassment a suspected violator with advance access to the [N.L.R.B.'s] case could 'construct defenses which would permit violations to go unremedied.'" 437 U.S. at 241, 98 S.Ct. at 2326 (1978) (citations omitted).

In sum, the affidavits and the pleadings reflect that disclosure of the QCRF would likely interfere with law enforcement proceedings aimed at violations of E.O. 11246 and would accordingly reduce the deterrent effect of the proscription of racial and other impermissible discrimination by government contractors.

In determining this matter, substantial weight has been given to the affidavits of Weldon Rougeau, Director of OFCCP, which have described with sufficient specificity and detail the documents at issue. The persuasive justification for non-disclosure has not been controverted.

The Court is to afford the agency the opportunity to meet [its burden of proof]

---

4. In fact, in order to increase its ability to detect violators of E.O. 11246, the OFCCP has published for comment a change in its regula-

tions that would give contractors fifteen (15), not thirty (30) days notice of an OFCCP audit. 44 Fed.Reg. 77006, 77016 (1979).

through the submission of affidavits that describe with reasonably specific detail the nature of the documents at issue and the justification for non-disclosure. The courts must accord substantial weight to these affidavits. That is, if the description in the affidavits demonstrates that the information logically falls within the claimed exemption and if the information is neither controverted by contrary evidence in the record nor by evidence of agency bad faith, then summary judgment is warranted. *Baez v. U. S. Department of Justice,* No. 79–1881 (D.C.Cir. filed August 25, 1980, slip op. at 14.)

Accordingly, having concluded that exemption seven of the FOIA applies, defendants are entitled to summary judgment.