THE EVENING NEWS ASSOCIATION v CITY OF TROY

Docket No. 66268. Argued March 9, 1983 (Calendar No. 7).—Decided October 24, 1983. Rehearing denied 418 Mich 1202.

The Evening News Association brought an action in the Oakland Circuit Court under the Freedom of Information Act against the City of Troy and its chief of police, seeking disclosure of the identities of two police officers involved in a homicide as well as of their reports which had been denied by the defendants. The court, Robert L. Templin, J., concluded that release of the information would interfere with law enforcement proceedings and denied disclosure. The Court of Appeals, M. F. Cavanagh, P.J., and R. M. Maher and D. F. Walsh, JJ., affirmed (Docket No. 47228). The plaintiff appeals.

In an opinion by Chief Justice Williams, joined by Justices Kavanagh, Levin, Ryan, and Brickley, the Supreme Court *held:*

The determination by the defendants that the requested information was exempt from disclosure lacked a particularized justification sufficient to sustain the claim of interference with law enforcement proceedings and the denial of disclosure under the Freedom of Information Act. The mere showing of a direct

REFERENCES FOR POINTS IN HEADNOTES

[1] 66 Am Jur 2d, Records and Recording Laws §§ 34, 36.
What are matters "specifically exempted from disclosure by statute" under Freedom of Information Act (5 USCS § 552(b)(3)). 45 L Ed 2d 763.
What are "records" of agency which must be made available under Freedom of Information Act (5 USCS § 552(2)(3)). 50 ALR Fed 336.
What statutes specifically exempt agency records from disclosure under 5 USCS § 552(b)(3)). 47 ALR Fed 439.

[2] 66 Am Jur 2d, Records and Recording Laws § 42.

[3] 66 Am Jur 2d, Records and Recording Laws § 41.
What constitutes investigatory files exempt from disclosure under Freedom of Information Act (5 USCS § 552(b)(7)). 17 ALR Fed 522.

[4] 66 Am Jur 2d, Records and Recording Laws § 44.
Scope of judicial review under Freedom of Information Act (5 USCS § 552(a)(3)) of administrative agency's withholding of records. 7 ALR Fed 876.

relationship between the information sought and an investigation is inadequate. Where the trial court does not receive a complete particularized justification of nondisclosure, it should conduct a review *de novo, in camera,* to determine whether such justification exists, or consider allowing counsel for the party seeking disclosure access to the contested information *in camera* under a special agreement whenever possible.

1. The Freedom of Information Act entitles all persons to full and complete information regarding the affairs of government and the official acts of public officials and public employees. Information in a public record must be disclosed unless it falls within the exemptions enumerated in the act, and the exemptions must be interpreted narrowly. In analyzing a claim of exemption from disclosure for interference with law enforcement proceedings, the burden of proof is on the party claiming exemption; exemptions must be interpreted narrowly; the agency from which information is requested must separate exempt and nonexempt material and make the nonexempt material available for examination and copying and supply detailed affidavits describing the matters withheld; and the justification of nondisclosure must indicate factually how a particular document or class of documents interferes with law enforcement proceedings.

2. The Michigan FOIA was patterned after the federal FOIA and was adopted by the Legislature in the light of the history of the federal act. Federal case law has required that where disclosure of records pertaining to an ongoing law enforcement investigation is denied the government must show something more than a direct relationship between agency records and the investigation to demonstrate that disclosure would interfere with enforcement proceedings. Conclusory statements which simply recite the language of the act are insufficient; rather, the agency must demonstrate by detailed affidavit how disclosure of the particular records or kinds of records would amount to interference on the basis of facts.

3. In this case, the denial of disclosure by the defendants and the determination of exemption by the trial court under the act were conclusory and generic. No particularized justification for the denial was offered by the defendants; nor did the trial court make findings with sufficient particularity to justify the claimed exemption and its judgment that disclosure would interfere with enforcement proceedings. Additionally, no attempt was made by the defendants to separate nonexempt materials from those claimed to be exempt. Under the facts,

the defendants failed to sustain their denial under the act, and must disclose the requested information.

4. Because, unlike an ordinary adversarial situation, litigation under the FOIA involves seeking facts which are not equally available to both sides, customary procedures are inadequate to assure that the rights of the party seeking information are not submerged beneath governmental obfuscation and mischaracterization and to enable the courts to effectively evaluate the factual nature of the disputed information. Thus, in order to secure disclosure of all pertinent information which is not exempt, Michigan trial courts should follow a procedure in analyzing claims of exemption under the FOIA which includes: 1) reception of a complete particularized justification for denial of disclosure; or 2) review of the materials *de novo, in camera,* to determine whether complete particularized justification exists; or 3) allowance of counsel for the party seeking disclosure to have access to the contested materials *in camera* under special agreement where necessary to clarify the dispute. Resolution of the controversy normally would occur at the first step unless the government is reluctant or antagonistic or the court is in doubt.

Reversed and remanded.

101 Mich App 650; 300 NW2d 667 (1980) reversed.

1. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS.

Information in a public record must be disclosed under the Freedom of Information Act unless it falls within an exemption enumerated in the act; the exemptions must be narrowly construed (MCL 15.231[2], 15.243; MSA 4.1801[1][2], 4.1801[13]).

2. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS.

A public body having custody of a public record containing information which is only partially exempt under the Freedom of Information Act must separate the exempt material from the nonexempt· and make the nonexempt material available for examination and copying (MCL 15.244[1]; MSA 4.1801[14][1]).

3. RECORDS — FREEDOM OF INFORMATION ACT — LAW ENFORCEMENT INVESTIGATIONS — EXEMPTIONS.

A record of a law enforcement investigation may be exempt from disclosure under the Freedom of Information Act where disclosure would interfere with law enforcement proceedings; however, the agency denying disclosure must demonstrate how disclosure of particular records or kinds of records would amount to interference on the basis of facts and not merely

offer conclusory statements which recite the language of the act
(MCL 15.243[1][6][i]; MSA 4.1801[13][1][6][i]).

4. RECORDS — FREEDOM OF INFORMATION ACT — EXEMPTIONS —
   JUDICIAL REVIEW.
   A trial court, in an action brought under the Freedom of Infor-
   mation Act, should follow a three-step procedure in analyzing
   denials of disclosure of public records in order to secure disclo-
   sure of all pertinent information which is not exempt; nor-
   mally, the court should review the complete particularized
   justification for the denial received from the public body, but
   where the public body is reluctant to particularize or is
   antagonistic, the court should conduct a review of the disputed
   materials *de novo, in camera,* to determine whether complete
   particularized justification of nondisclosure exists, or should
   allow counsel for the party seeking disclosure to have access to
   the materials *in camera* under a special agreement where
   necessary for clarification of the dispute.

*Butzel, Long, Gust, Klein & Van Zile* (by *Richard E. Rassel* and *James E. Stewart)* for the plaintiff.

*John J. Martin, III,* Assistant City Attorney, for the City of Troy.

Amicus Curiae:

*Butler, Modelski & Bunting* (by *Jeffrey Butler* and *Lawrence J. Bunting)* for the Michigan Association of Chiefs of Police.

WILLIAMS, C.J. *(for remand).* This is a case of first impression concerning the Michigan Freedom of Information Act. MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* We are asked to determine whether the identities of two police officers and their incident reports describing the David Prior homicide, which were both requested by the plaintiff newspaper, were properly withheld from disclosure under the FOIA by the City of Troy and its police chief.

Specifically, we must decide, first, whether the Oakland Circuit Court and the Court of Appeals erred in holding that the defendants met their statutory burden of proof in withholding the incident reports and the identities of the two officers involved in the David Prior homicide which were contained in the requested reports from plaintiff under a "generic [blanket] determination" standard. MCL 15.240(1); MSA 4.1801(10)(1). Second, we must consider whether the defendants failed to meet their statutory burden in neglecting to separate exempt material from that which was nonexempt. MCL 15.244(1); MSA 4.1801(14)(1). We answer both questions in the affirmative, and, therefore, we reverse.

Finally, in considering the appropriate procedures that a circuit court should employ in determining whether a requested document and the information contained therein should be withheld from disclosure under the FOIA exemptions, we generally adopt the procedures set forth in *Vaughn v Rosen,* 157 US App DC 340, 346-348; 484 F2d 820 (1973), and *Ray v Turner,* 190 US App DC 290; 587 F2d 1187 (1978).

In considering the issues presented in this case, we look first to the basic policy of the FOIA as expressed in MCL 15.231(2); MSA 4.1801(1)(2):

"It is the public policy of this state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process."

The exemption relied on by the trial court in denying plaintiff's request reads as follows:

"A public body may exempt from disclosure as a public record under this act:

\* \* \*

"(b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:

"(i) *Interfere with law enforcement proceedings.*" (Emphasis added.) MCL 15.243(1)(b)(i); MSA 4.1801(13)(1)(b)(i).

Additionally, MCL 15.244(1); MSA 4.1801(14)(1) affirmatively provides that:

"If a public record contains material which is not exempt under section 13, as well as material which is exempt from disclosure under section 13, *the public body shall separate the exempt and nonexempt material* and make the nonexempt material available for examination and copying." (Emphasis added.)

In the case at bar, the trial court, without the defendants producing particularized reasons against disclosure, nevertheless concluded without particularized reasons that release of the reports as well as the identities of the two officers which were contained in the requested reports would interfere with law enforcement proceedings. The Court of Appeals held that the "generic determination" by the circuit court without a showing by the defendants of particular risk was not erroneous.

First, we hold that the "generic determination" standard used by the trial court and affirmed by the Court of Appeals that release of the reports along with the information contained in them would "interfere with law enforcement proceedings" and "would indeed have a chilling effect on the investigation" did not meet the defendants' statutory burden of proof to sustain their denial.

Second, we hold that the defendants had an

affirmative statutory duty under the act to separate exempt material from that which is nonexempt. The defendants in the instant case failed to undertake this duty.

Finally, we reverse the judgments of the trial court and the Court of Appeals and generally adopt the procedures laid down in *Vaughn v Rosen, supra,* and *Ray v Turner, supra.*

## FACTS

In the early hours of July 31, 1979, two Troy police officers responded to a radio report concerning an ongoing larceny in a parked van. The owner, David Prior, was inside the van and was armed with a pellet gun. While checking the van, one of the officers shot and killed the owner. After the homicide, the two officers and several investigating officers filed their customary incident reports describing the events leading to the killing.

The plaintiff Evening News Association, publisher of the Detroit News, made oral requests of the City of Troy on July 31 and during each of the three succeeding weeks. On August 22, 1979, plaintiff confirmed its requests in writing. The requests were made pursuant to the procedures established in Michigan's FOIA. MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* The information requested was copies of the two officers' incident reports and the identities of the two officers involved in the David Prior killing. The identities of the two officers were contained in those reports. The Troy Police Chief and the City of Troy, along with the Oakland County Prosecutor's Office, refused the requests. The plaintiff, on August 27, 1979, therefore, brought an action in the Oakland Circuit Court to compel disclosure under the FOIA.

At a show-cause hearing on September 11, 1979, the defendants asserted that the reports and all the information contained in them were exempt from disclosure under MCL 15.243(1)(b)(i)-(vi); MSA 4.1801(13)(1)(b)(i)-(vi).[1] However, a witness admitted that some of the material sought was nonexempt.[2] Plaintiff's witnesses testified that defendants had, in the past, disclosed information of the kind presently being requested and indicated that another police department in Oakland County had also released such information.[3]

[1] MCL 15.243(1)(b)(i)-(vi); MSA 4.1801(13)(1)(b)(i)-(vi) provides that materials exempt from disclosure include:

"(b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:

"(i) Interfere with law enforcement proceedings.

"(ii) Deprive a person of the right to a fair trial or impartial administrative adjudication.

"(iii) Constitute an unwarranted invasion of personal privacy.

"(iv) Disclose the identity of a confidential source, or if the record is compiled by a criminal law enforcement agency in the course of a criminal investigation, disclose confidential information furnished only by a confidential source.

"(v) Disclose law enforcement investigative techniques or procedures.

"(vi) Endanger the life or physical safety of law enforcement personnel."

The federal provision is nearly identical to the Michigan language:

"(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel". 5 USC 552(b)(7).

See, generally, Comment, *The Freedom of Information Act: A Survey of Litigation Under the Exemptions,* 48 Miss L J 784 (1977).

[2] See fn 22.

[3] The following dialogue took place on direct examination between plaintiff and one of its witnesses:

"*Q.* Will you state your name for the record and my benefit?

"*A.* Joel Smith.

"*Q.* Where are you presently employed?

"*A.* Detroit News.

"*Q.* What are your duties there now?

"*A.* Assistant news editor in charge of our suburban operation.

"*Q.* How long have you been in that position?

"*A.* For about a year and a half.

"*Q.* Prior to that what did you do?

"*A.* Just prior to that I was the assignment editor for the Detroit News. Prior to that, from 1970 to 1978, I was employed in our Oakland County Birmingham office for from about 1975 to 1978, I was the Oakland County Bureau Chief in charge of the Oakland County operation.

"*Q.* Was it part of your duty at that time to attempt to gather news from the Troy Police Department?

"*A.* Yes, it was. I covered most of our police operations involving 44 law enforcement agencies including Troy.

"*Q.* Were you here for the testimony this morning?

"*A.* Yes, I was.

"*Q.* Did you hear Chief Donovan testify that it was the policy of the City of Troy not to disclose the name of an officer under investigation until he was charged?

"*A.* Yes, I did hear him say that.

"*Q.* Do you recall an incident in which the Troy Police Department did not conform to that policy?

"*A.* Yes, I do.

"*Q.* What do you recall about that incident?

"*A.* In January, 1977, I was given information that a Troy police officer, a Sergeant Thomas Morris, was under investigation for gun running. As I pieced together the information, or once I pieced together the information, I went over and sat down and had a conversation with the police chief, at that time, Forrest Fisher. We met at his office, at his desk, and at that point we talked about this story, the information I had, including the point where I asked him if it was in fact Thomas Morris that's being investigated. He said, 'Yes, it is.'

"*Q.* So, in fact, the chief gave you the name?

"*A.* Yes, he did.

"*Q.* Had that officer been charged?

"*A.* At that point he had not been charged. It wasn't until the chief did provide information that he was relieved of duty at least a week before, and he was subsequently charged about three months later.

"*Q.* Did you publish his name at the time you first received it from the chief of police?

"*A.* No, we did not.

"*Q.* Why?

"*A.* Well, there were a number of reasons. One, there was a federal grand jury investigating this. They still had some secret grand jury testimony to receive yet at this point, and it was just our discretion, we thought that we should withhold the name for the time being.

"*Q.* Did you make an editorial judgment to withhold it?

"*A.* It was an editorial judgment. It was our judgment.

"*Q.* As part of your duty as the Oakland County Bureau Chief, did you know the policy of any of the other police departments in Oakland County regarding disclosure of names of officers involved in shooting incidents?

"*A.* In Oakland County?

"*Q.* Yes.

"*A.* Yes. The policies vary somewhat, but I'll give you some examples. Like Birmingham, Birmingham has a policy of releasing the names of officers. We had a situation several months ago that within a 30-day period Birmingham police were involved in two high-speed chases. The first one resulted in a car that was being chased running into a—struck another car—at Big Beaver and Woodward, resulting in a fatal accident. Police released the names of the officers that were chasing that car.

"About a month later there was another high-speed chase down Woodward Avenue. I believe it was at Normandy in Royal Oak that the Birmingham police car struck a car traveling across Woodward with the green light. The person in the other car lost his arm as a result of this police chase. Birmingham police released the name of that officer who happened—I remember is Tim Gracey.

"Southfield, while it hasn't come up yet, we have been assured through Public Safety Director Roland G. Tobin that the names will always be available.

"*Q.* When you were in the courtroom this morning, do you recall Chief Donovan saying that it was the policy of the Troy police department that the name of the shopkeeper involved in a shooting would not be released until that person was charged.

"*A.* Yes, I did hear him say that.

"*Q.* Do you recall an incident in which the Troy police did not conform to that policy?

"*A.* Yes, I do.

"*Q.* What do you recall about that?

"*A.* In July, it was like the 12th or 13th, going to work, I heard on the radio that a son of a store owner in Troy, a party store owner, shot and killed a man over an argument over a six-pack of beer. Once at the office, I instructed one of our general assignment reporters, Chris Singer, to call the Troy police, get the information, and do a story. He did that, wrote the story, and it included the names of the—what happened at that party store.

"*Q.* What did happen at that party store; do you recall?

"*A.* Well, as I recall, there was a customer who went in, purchased a six-pack of beer. The carton somehow broke. The beer tumbled to the floor and broke. There was an argument over whether the customer should get another six-pack of beer for no charge, and apparently there was a pushing and shoving match. As I recall, the store owner's son was worried about some kind of metal plate in his face, that it might be dislodged, injuring him severely, and eventually shot the customer.

In upholding the defendant's denial of disclosure, the trial court "generically" concluded that the release of this information would "interfere with law enforcement proceedings". MCL 15.243(1)(b)(i); MSA 4.1801(13)(1)(b)(i). The court, without requiring the defendants to particularize their position, stated that the testimony at the hearing indicated that disclosure could jeopardize an ongoing criminal investigation. The opinion also stated that release of the information would allow the plaintiff to obtain conflicting statements by the witnesses noted by the officers in their reports and that release would further inflame an emotional public.

About two weeks after the trial court's decision and almost eight weeks after the homicide, the Oakland County Prosecutor's Office on September 24, 1979, released a report entitled "Investigation Concerning the Homicide of David Prior" which exonerated the two officers of criminal responsibility for the killing without ever naming them. At no time have the defendants released the requested information to the plaintiff.

On appeal, the Court of Appeals affirmed the trial court's judgment. 101 Mich App 650; 300 NW2d 667 (1980). We granted leave on December 21, 1981. 412 Mich 884.

## I. THE PROPRIETY OF A GENERIC DETERMINATION

### A. *Statutory Interpretation*

The threshold issue is whether under the FOIA the trial court can by a "generic determination"

"*Q.* Do you know if that son of that party store owner was ever charged?

"*A.* As of last Friday, when I checked with the Troy District Court, he was not charged.

"*Mr. Stewart:* Thank you very much."

foreclose the right of a citizen[4] to know what his government is doing. We hold that a "generic determination" does not satisfy the FOIA.

In reaching our decision, we are called upon to construe three pertinent sections of the FOIA, having in mind that the overall policy of the FOIA is "that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them", MCL 15.231(2); MSA 4.1801(1)(2),[5] and that the plaintiff in this case is in the business of enabling all persons to have such full and complete information and is not a defendant seeking early discovery in a suit against it.

The operative language of the exemption reads as follows:

"A public body may exempt from disclosure as a public record under this act:

*    *    *

"(b) Investigating records compiled for law enforcement purposes, *but only to the extent that disclosure* as a public record *would* do any of the following:

"(i) *Interfere with law enforcement proceedings.*"[6] (Emphasis added.)    MCL    15.243(1)(b)(i);    MSA 4.1801(13)(1)(b)(i).

It is immediately apparent that the exemption

---

[4] Standing to bring an action to compel disclosure under FOIA is given to any "individual, corporation, partnership, firm, organization, or association". MCL 15.232(a); MSA 4.1801(2)(a). The plaintiff falls within this description.

[5] MCL 15.232(c); MSA 4.1801(2)(c) provides that:

" 'Public record' means a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created. This act separates public records into 2 classes: (i) those which are exempt from disclosure under section 13, and (ii) all others, which shall be subject to disclosure under this act."

[6] The federal exemption is nearly identical to the Michigan exception. 5 USC 552(b)(7)(A). See fn 1.

from disclosure does not automatically apply to all investigating records[7] compiled for law enforcement purposes. There are three limitations that are importantly applicable:

(1) MCL 15.243(1)(b)(i); MSA 4.1801(13)(1)(b)(i) itself supplies one important limitation on disclosure:

"only to the extent that disclosure * * * would * * *' interfere with law enforcement proceedings".

(2) MCL 15.244(1); MSA 4.1801(14)(1), adds another significant limitation:

"If a public record contains material which is not exempt * * * as well as material which is exempt from disclosure * * *, the public body shall separate the exempt and nonexempt material available for examination and copying."[8]

(3) MCL 15.240(1); MSA 4.1801(10)(1), places the burden of proving the right to exemption on the party claiming it:

"[T]he burden is on the public body to sustain its denial [of disclosure]."

In analyzing these provisions together, it is apparent that the exemptions require particularized

---

[7] MCL 15.232(c); MSA 4.1801(2)(c) provides that:

" 'Public record' means a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created. This act separates public records into 2 classes: (i) those which are exempt from disclosure under section 13, and (ii) all others, which shall be subject to disclosure under this act."

[8] The federal FOIA states that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 USC 552(b).

justification. First of all, MCL 15.240(1); MSA 4.1801(10)(1) puts the burden of proof on the public body[9] seeking exemption. Then MCL 15.243(1)(b)(i); MSA 4.1801(13)(1)(b)(i) specifies that the ·exemption applies "only to the extent that" there is interference. Finally, MCL 15.244(1); MSA 4.1801(14)(1) makes particularization explicit: "the public body shall separate the exempt and nonexempt material".

### B. *Case Law*

We next consider the relevant decisions under the federal FOIA. These cases consider the legislative history and purposes of the legislation. The Michigan Legislature in enacting the Michigan FOIA did so in relation to this federal history.

In determining the legislative meaning of the interference with "law enforcement proceedings" exemption, it must be remembered that it was not adopted by the Legislature in a vacuum.[10] Michi-

[9] MCL 15.232(b)(i)-(v); MSA 4.1801(2)(b)(i)-(v) states that:

"(b) 'Public body' means:

"(i) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of the state government, but does not include the governor or lieutenant governor, the executive office of the governor or lieutenant governor, or employees thereof.

"(ii) An agency, board, commission, or council in the legislative branch of the state government.

"(iii) A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof.

"(iv) Any other body which is created by state or local authority or which is primarily funded by or through state or local authority.

"(v) The judiciary, including the office of the county clerk and employees thereof when acting in the capacity of clerk to the circuit court, is not included in the definition of public body."

[10] Since we are looking to the federal FOIA and the cases interpreting that act for assistance in our analysis, it is important to note a major legislative change which indicated a congressional intent to narrow the law enforcement records exemptions. See fn 1.

The relevant federal provision, as originally adopted, covered "in-

gan has had an established history of requiring public agency disclosure before the act was passed.[11] Moreover, we have noted that the Michigan exemptions created in the FOIA generally mirror the exemptions found in the federal FOIA, and we held that "[t]he similarity between the FOIA and the federal act invites analogy when deciphering the various sections and attendant judicial interpretations". *Kestenbaum v Michigan State University,* 414 Mich 510, 525; 327 NW2d 783 (1982). See, also, *Bredemeier v Kentwood Bd of Ed,* 95 Mich App 767, 771; 291 NW2d 199 (1980); *Penokie v Michigan Technological University,* 93 Mich App 650, 658; 287 NW2d 304 (1979); *IBM v Treasury Dep't,* 71 Mich App 526, 535; 248 NW2d 605 (1976); *Citizens for Better Care v Public Health Dep't,* 51 Mich App 454, 464-465; 215 NW2d 576 (1974).

Our reading of the federal cases finds that the most relevant case is *Campbell v Dep't of Health & Human Services,* 221 US App DC 1; 682 F2d 256 (1982). Like the instant case and unlike the case of

---

vestigatory files compiled for law enforcement purposes except to the extent available by law to a private party". PL 89-487, § 3(e); 80 Stat 250 (1966). Because of a congressional belief that the exemption had been applied too broadly, Congress amended it in 1974 to read "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings". For the remaining language, see fn 1.

Thus, contrary to the analysis employed by the Court of Appeals in the instant case, Congress explicitly rejected a per se rule of exemption under the federal FOIA since such an approach would withhold too much information from disclosure. See Note, *FOIA Exemption 7 and Broader Disclosure of Unlawful FBI Investigations,* 65 Minn L Rev 1139, 1143-1144 (1981). In fact, this fact was conceded by the United States Supreme Court in *NLRB v Robbins Tire & Rubber Co,* 437 US 214, 221-236; 98 S Ct 2311; 57 L Ed 2d 159 (1978).

[11] See *Nowack v Auditor General,* 243 Mich 200, 203-204; 219 NW 749 (1928); *Burton v Tuite,* 78 Mich 363, 375; 44 NW 282 (1889); *Booth Newspapers, Inc v Muskegon Probate Judge,* 15 Mich App 203, 205; 166 NW2d 546 (1968).

*NLRB v Robbins Tire & Rubber Co,* 437 US 214; 98 S Ct 2311; 57 L Ed 2d 159 (1978), on which the Court of Appeals relied in its opinion, *Campbell* is a "third party" case. A "third party" case is one where the party seeking disclosure of public documents is not itself the target of a legal action by the party from whom the documents are sought, but an uninvolved "third party". The *Robbins Tire* case involves a target plaintiff.

In the *Campbell* case, Campbell had advised both his employer and the Federal Drug Administration that his employer was violating FDA regulations. Campbell's employer responded by discharging him. Thereupon Campbell sued his employer for damages in the state court. In the meantime, the FDA began to investigate Campbell's employer. At this point, Campbell, for use in his state damage action, requested certain documents that his employer had filed with the FDA.

The *Campbell* court specifically noted that this case did not involve a plaintiff who was an actual or potential target of an enforcement action who was seeking access to records not in its possession, as was the situation in *Robbins Tire.* Rather, it involved a third party attempting to procure material that a target had submitted to the defendant. 221 US App DC 4.

Under its analysis of the legislative history associated with the exemption, the court stated that "the government must show something more than a direct relationship between agency records and a pending investigation in order to demonstrate that disclosure would interfere with enforcement proceedings". 221 US App DC 6. *Campbell* noted that *Robbins Tire* indicated that an agency need not justify its withholding of each and every document. But the *Campbell* court enunciated this rule:

"Congress, we conclude, based on *[sic]* the words it employed and the relevant legislative history, did not authorize blanket exemption for such [ongoing investigation] records. It required something more. We hold that, to prevail under Exemption 7(A), the government must show, by more than conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding." 221 US App DC 4.

This *Campbell* quotation is significant because it establishes the rule that the government must show:

(1) *how* the *particular* kinds of records would interfere with a pending enforcement investigation,

(2) by more than *conclusory* statements.

As we shall see in the case at bar, the defendants presented *conclusory* testimony and the court in turn made *conclusory* findings.

The word "how" in required showing (1) is especially significant. It is, of course, the opposite of "conclusory". It means that the agency seeking to exempt records from disclosure must give factually based reasons for not releasing particular kinds of documents. Along this line, the following sentence from *Campbell* is instructive:

"The government makes that claim but, consonant with the style it has adopted for its other assertions of interference with the investigation, it offers not even a slim bill of particulars." (Footnote omitted.) 221 US App DC 5.

It is a "bill of particulars" that is so obviously missing in the defendants' testimony and in the court's determination in the case at bar. Defendants never show "how", and why, for example,

the release of the officers' names would have a "chilling effect on the investigation".

The "not conclusory-give details" rule is so significant that it recurs like a dominant theme throughout *Campbell.* For example:

"[T]he government does not meet its burden, nor does the district court discharge its responsibility, through conclusory statements, unaccompanied by supporting detail, that these exceptions are applicable." (Footnote omitted.) 221 US App DC 10-11.

In remanding the case to the district court, the *Campbell* court concluded that the trial court's affirmation of the agency's denial rested upon an overly expansive reading of the exemption. It stated that:

"Campbell is not an actual or potential target of an FDA enforcement proceeding who seeks early discovery of the strength of the government's case in order to tailor his defense. Rather, he is a third party seeking information to which a potential target apparently has access and, indeed, has submitted to the agency. * * * It does mean, however, that the district court must conduct a more focused and particularized review of the documentation on which the government bases its claim that the information Campbell seeks would interfere with the investigation." 221 US App DC 10.

The same factors which guided the *Campbell* court not to adopt the generic determination of *Robbins Tire* also exist in the case at bar, as we shall later detail.

Similarly, in *Jos Schlitz Brewing Co v Securities and Exchange Comm,* 548 F Supp 6 (D DC, 1982), a third party, a competitor of the plaintiff, requested information from the defendant arising from an investigation of the plaintiff. The plaintiff brought suit to prevent the disclosure of documents submit-

ted by it to the defendant.[12] The court stated that *"Robbins [Tire]* does not stand for the principle that a party claiming exemption from disclosure need only present a bald claim without more". *Schlitz,* p 8. Since the same concerns calling for a generic determination in *Robbins Tire* did not exist, the *Schlitz* court concluded that the documents were not exempt.

Moreover, in *RCA Global Communications, Inc v Federal Communications Comm,* 524 F Supp 579 (D Del, 1981), the plaintiff, who was not under a present or pending investigation by the defendant,[13] sought disclosure from the defendant of documents which were submitted to it by a competitor company in response to the defendant's subpoena. The court refused to affirm the agency's denial on the basis of a generic determination that these records were exempt. Thus, even though in some cases a generic determination may be possible, the record still must be sufficient to demonstrate the government's right to exempt as to each category of documents. *RCA Global,* p 586. In short, the court required some particularization of denial for the relevant documents.

The lone third-party decision which does not follow the reasoning of the earlier cases is *Copus v Rougeau,* 504 F Supp 534 (D DC, 1980). In that case, an apparently non-target plaintiff[14] filed an action

---

[12] The type of case in *Schlitz Brewery* is generally described as "reverse FOIA" in that a party submitting records to an agency sues the agency to prevent disclosure by asserting an appropriate exemption. See *Chrysler Corp v Brown,* 441 US 281; 99 S Ct 1705; 60 L Ed 2d 208 (1979).

[13] This case is classified as a third-party decision in that at the time the plaintiff made its request there was no present or pending investigation of the plaintiff by the defendant. Moreover, there was no special relationship between the plaintiff and the corporation which submitted the records to the defendant. See *RCA Global,* 524 F Supp 581.

[14] In *Copus,* the attorney-plaintiff, requesting the documents, was

to compel disclosure of quarterly compliance review forecasts prepared by the Department of Labor's Office of Federal Contract Compliance Programs. The court, in denying disclosure, stated that *Robbins Tire* was contrary to plaintiff's position. The court held that it could determine "the *likely effect of disclosure in a common sense generic manner,* and the defendant need not show specific examples where disclosure has harmed OFCCP enforcement efforts" (emphasis in original). *Copus,* pp 538-539. Finally, it indicated that under a generic determination all the agency had to show was that disclosure "would *generically* 'interfere with enforcement proceedings'" (emphasis in original). The *Copus* court has given the holding of *Robbins Tire* the most expansive reading to date.[15]

not identified as representing any "person" under investigation by the defendant's agency. Therefore, *Copus* is treated as a third-party case. The *Copus* court seemed concerned that if the requested information was prematurely released, it could end up in the possession of targets under investigation. 504 F Supp 539-540.

[15] In *Robbins Tire,* an employer was charged by the NLRB with committing an unfair labor practice under the FOIA. In anticipation of the administrative hearing on the charge, the employer requested copies of the statements given to the NLRB by all prospective witnesses. The NLRB denied the request, claiming that disclosure would interfere with enforcement proceedings. The employer, who was the target of the agency's investigation which related to the enforcement proceedings, asserted that the NLRB had failed to show *specifically* that release of the particular statements would hamper the investigation. The United States Supreme Court, however, rejected this argument and, instead, held that the use of a generic determination standard was possible "with respect to particular kinds of enforcement proceedings". 437 US 236.

While the *Robbins Tire* court, in a three-step inquiry, rejected a case-by-case approach, its holding nevertheless arose from specific concerns about protecting NLRB procedures when it investigates alleged unfair labor practices by employers. 437 US 236-243. First, the court held that the language of this exemption, unlike the other law enforcement exemptions, appeared to allow certain generic determinations against disclosure for particular proceedings like those brought by the NLRB. *Id.,* pp 223-236. Second, the legislative history of the act indicated that this exemption was to eliminate blanket exemptions, like the generic determination, except that such a deter-

Thus, a review of the cases factually similar to the *Campbell* case clearly indicates that a generic determination should not have been made in this case.[16] First, the plaintiff Evening News Association was not seeking records that were part of the defendants' inquiry into its corporate conduct. Second, the plaintiff requested the information for the lawful corporate purpose of publishing a newspaper. Third, there were only generic assertions by the defendants that disclosure would harm their investigations. Finally, there was no particularized evidence[17] in the record that disclosure of the

mination could be made "with respect to particular kinds of enforcement proceedings". *Id.,* p 236. Third, the court was specifically concerned about the deleterious effect upon NLRB unfair labor practice investigations if pre-hearing statements given by prospective witnesses were released to the target employer. *Id.,* pp 236-242. However, none of the same concerns expressed in *Robbins Tire* exist in the instant case.

Moreover, in contrast to the *Campbell* case, many of the cases interpreting *Robbins Tire* which were also cited by the Court of Appeals have involved FOIA requesters who were either the target or potential target or had a special relationship to a target being investigated by the public agency. See *Ryan v Dep't of Justice,* 595 F2d 954 (CA 4, 1979); *Amolsch & Madden, Inc v Federal Trade Comm,* 192 US App DC 200; 591 F2d 809 (1978) (did not employ *Robbins Tire); Steinberg v Internal Revenue Service,* 463 F Supp 1272 (SD Fla, 1979); *Kanter v Internal Revenue Service,* 478 F Supp 552 (ND Ill, 1979); *Grabinski v Internal Revenue Service,* 478 F Supp 486 (ED Mo, 1979); *Zeller v United States,* 467 F Supp 487 (ED NY, 1979). In most cases, *Robbins Tire* was found dispositive because of concern caused by a party who attempts to impede an agency investigation of the requester. Thus, the requesters generally tried to employ the FOIA as a way to gain earlier and greater access to an agency's investigation than they would otherwise have had. This was specifically rejected by the *Robbins Tire* court. 437 US 241. However, the same concerns do not exist in the instant case because plaintiff newspaper is not a target of police investigation seeking early discovery to protect itself against the police. Therefore, these cases are inapposite to the case at bar.

[16] Three members of the United States Supreme Court in *Robbins Tire* believed that an exemption per se should apply in all law enforcement records exemption cases. See *Robbins Tire,* 437 US 243 (Stevens, J., *concurring).* See, also, fns 1, 10.

[17] The trial court's review of these records is to be a *de novo* review which connotes a strict standard of review. This conclusion is also supported by the fact that the Legislature has placed the burden of

incident reports would have interfered with its investigation as it relates to witnesses' statements.[18]

The circumstance that the plaintiff is a third party does not, as the *Campbell* court said, mean that it "must prevail" but rather that the circuit court "must conduct a more focused and particularized review of the documentation on which the government bases its claim that the information [it] seeks would interfere with the investigation". 221 US App DC 10.

## C. *Rules Derived From Statutory Interpretation and Case Law*

From our analysis of the FOIA itself and from the relevant federal cases interpreting the similar

proof to sustain denial on the public agency. MCL 15.240(1); MSA 4.1801(10)(1).

[18] The amicus curiae directs this Court to several New York cases which it believes support the notion that the police incident reports should not have been disclosed in the instant case. *Wunsch v City of Rochester,* 108 Misc 2d 854; 438 NYS2d 896 (1981) (records relating to citizen's complaint against police officers alleging unnecessary use of force fell within New York's FOIA); *Sheenan v City of Binghamton,* 59 AD2d 808; 398 NYS2d 905 (1977) (police complaint was part of an investigatory file and should not be divulged); *Westchester Rockland Newspapers, Inc v Mosczydlowski,* 58 AD2d 234; 396 NYS2d 857 (1977) (police incident reports on events surrounding death of prisoner should be withheld unless reports present purely factual matters).

We refuse to adopt the New York line of reasoning for several reasons. First, it appears that New York, unlike Michigan, did not have a common-law tradition of agency disclosure before its FOIA was enacted. See *Wunsch, supra,* pp 898-899, citing *Cirale v 80 Pine Street Corp,* 35 NY2d 113; 359 NYS2d 1; 316 NE2d 301 (1974). See, also, cases cited in fn 11. Second, we read the language in the Michigan FOIA and the federal FOIA as indicating that the respective legislatures did not intend a blanket exemption like the one provided in the New York cases. Third, several other states, considering similar documents, did not apply blanket exemptions. *Houston v Rutledge,* 237 Ga 764; 229 SE2d 624 (1976) (files relating to deaths of jail inmates compiled by sheriff's department); *Reinstein v Police Comm'r of Boston,* 378 Mass 281; 391 NE2d 881 (1979) (rejects a blanket exemption in regard to police firearm discharge reports); *Lodge v Knowlton,* 118 NH 574; 391 A2d 893 (1978) (plaintiff sought file prepared by state police regarding a car accident involving a police cruiser under control of the chief of police).

federal FOIA, we derive the following rules that should be used in analyzing a claim of exemption from disclosure under the FOIA:

1. The burden of proof is on the party claiming exemption from disclosure. MCL 15.240(1); MSA 4.1801(10)(1).

2. Exemptions must be interpreted narrowly. *Vaughn v Rosen,* 157 US App DC 340, 343; 484 F2d 820 (1973).

3. "[T]he public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying." MCL 15.244(1); MSA 4.1801(14)(1); *Vaughn v Rosen,* 157 US App DC 345.

4. "[D]etailed affidavits describing the matters withheld" must be supplied by the agency. *Ray v Turner,* 190 US App DC 290, 317; 587 F2d 1187 (1978).

5. Justification of exemption must be more than "conclusory", *i.e.,* simple repetition of statutory language. A bill of particulars is in order. Justification must indicate factually how a particular document, or category of documents, interferes with law enforcement proceedings. *Campbell v Dep't of Health & Human Services,* 221 US App DC 1, 4-6, 10-11; 682 F2d 256 (1982); *Vaughn v Rosen,* 157 US App DC 347.

6. The mere showing of a direct relationship between records sought and an investigation is inadequate. *Campbell v Dep't of Health & Human Services,* 221 US App DC 8-9.

D. *Application to Instant Case*

Application of the statutory construction requirements developed above to the opinion of the trial court results in the conclusion that its determination was conclusory and generic. Because of

the defendants' and the court's lack of particularized justification of this exemption, the circuit court findings do not indicate that the FOIA requirements were met. The full text of the court's opinion is included in the appendix, but, for convenience, pertinent portions are set out here for consideration:

"It was the testimony of Mr. Thompson, the Chief Assistant Prosecutor, that they are now engaged in an ongoing criminal investigation, that to disclose any information whatsoever, information requested by the plaintiff, namely the reports filled out by the responding officers, would indeed jeopardize their investigation and interfere with the law enforcement proceedings in that regard. That they have certain information given to them confidentially, although it may not be stated to be confidential, it's their feeling—that is, the prosecutor's feeling—that the information was given to them by witnesses who gave it only on the condition that the information would be kept confidential.

\* \* \*

"The prosecutor claims that any revelation now of the names and reports made by the responding officers would indeed have a chilling effect on the investigation which has taken longer than anticipated, but some things have come up which have to be checked for statements which did not quite align themselves with prior statements made by some to the witnesses.

\* \* \*

"Again, the plaintiff states that it doesn't want all the files, just the reports of the responding officers, which therefore should not endanger or jeopardize the finalization and completion of the investigation.

\* \* \*

"The only possible prejudice to the public that the court can see at this stage is that the news, when it is obtained, will indeed be stale news. The court finds that enough has been educed from the testimony of the prosecutor's witness, Mr. Thompson, and the officers

that the investigation could indeed well be jeopardized by providing to the plaintiff the information that it seeks at this time. It would be very difficult to screen out names of witnesses which the responding officers may have noted which would be subject to providing testimony or being researched by the press which could conceivably result in conflicting statements and further hamper the investigation; also, piecemeal, partial statements in the press could, conceivably, inflame the public further than it has already been inflamed.

"It is the decision of the court, accordingly, that the request of the plaintiff be denied."

The question now before us is whether the circuit court's opinion evidences that it had found that the particular sections of the public record requested would for particular reasons "interfere with law enforcement proceedings". The quotation above includes the circuit court's summary of pertinent testimony and its conclusions. The operative part of the opinion is the last long paragraph. Let us review it sentence by sentence.

The first sentence referring to "stale news" relates to the court's conception of a FOIA balancing test. While in our opinion the Legislature was concerned with more fundamental principles than whether news was fresh or stale, this sentence fails to speak directly to any exemption requirements. Specifically, this sentence gives no reason why disclosure of the two incident reports or the names of their authors would interfere with law enforcement proceedings.

The second sentence, "[t]he court finds that enough has been educed from the testimony of the prosecutor's witness, Mr. Thompson, and the officers that the investigation *could indeed well be jeopardized* by providing to the plaintiff the information that it seeks at this time" (emphasis added), is the critical one and does not satisfy the

statute. To begin with, it was the defendants' burden to show, and the court's duty to find, that the particular information the plaintiff wanted "would * * * interfere with law enforcement proceedings". "Could indeed well be jeopardized" and "would * * * interfere" are obviously not the same thing. The statute is positive. The opinion is tentative. The court has not made the required findings.

Furthermore, the sentence by itself is conclusory unless the educed testimony contains particularized justification. However, the testimony relied upon cannot be the basis for proper judicial findings of a reason or reasons for nondisclosure. According to the court, the testimony of Mr. Thompson referred to covered three things. First, "that they are now engaged in an ongoing criminal investigation, that to disclose any information whatsoever * * * would * * * interfere with the law enforcement proceedings in that regard". That statement at best is conclusory. It offers a statement of opinion, not of reason. Also it is an attempted generic justification for nondisclosure. In any event, no reason is given why such disclosure would interfere with law enforcement proceedings.

Mr. Thompson's testimony, second, indicates, although somewhat weakly, that some of the witnesses testified only because they understood that their testimony would be held confidential. If indeed that was the case, that is a plausible reason not to reveal their testimony. Such testimony need not be disclosed. However, it could be separated from testimony that was not so given. In any event, the direct reporting by the two police officers of what they did and saw has no such protection of confidentiality.

Third, in the second paragraph of the quotation

from the court's opinion, it is stated that "[t]he prosecutor claims that any revelation now of the names and reports made by the responding officers would indeed have a chilling effect on the investigation". As already adverted to, the circuit court opinion attempts to justify denial of release by a conclusory statement and reference to its summary of the testimony. Included in that summary is the following:

"The prosecutor claims that any revelation now of the names * * * would indeed have a chilling effect on the investigation."

Again, this statement is entirely conclusory. There are no reasons given. In no way does this statement satisfy statutory requirements.

In sum, the court's second sentence in no way satisfied the statutory requirements which had to be met in not disclosing the officers' reports.

As for the third and last sentence in the court's operative paragraph, it too fails to satisfy the statute. That "[i]t would be very difficult to screen out names" is not a concern of the statute. The statute states, "the public body *shall* separate the exempt and nonexempt material" (emphasis supplied). If it can be done, it must be done.

In any event, the statement is largely, if not wholly, conclusory. The justification, if any, is that the names of witnesses "could conceivably result in conflicting statements and further hamper the investigation; also piecemeal, partial statements in the press could, conceivably, inflame the public further than it has already been inflamed". The "could conceivably result", etc., clause is speculative and conclusory. It certainly is no foundation to justify an exemption. The "could, conceivably, inflame the public" clause not only is speculation,

but smacks of public censorship, which would not appear to be the purpose of FOIA. There may possibly be occasions where public safety requires minimal delay of announcements, but not for eight weeks and not on such a speculative basis. In sum, this third sentence gives no justification for non-disclosure either.

Careful review of the whole paragraph, therefore, indicates that the trial court failed to find with sufficient particularity that the defendant had specifically justified its claimed exemption. It therefore erred by not showing a proper reason for denying the plaintiff's request. This is the same rationale as that for the *Campbell* decision, which that court summarized as follows:

"We conclude that the district court's response was too quick and categorical to comport with the congressional directive. That directive, we hold, requires a more particularized showing by the government and a more precise examination by the district court before a judgment may be made that the production sought would 'interfere with enforcement proceedings.'" 221 US App DC 2.

## II. DISCLOSURE OF IDENTITY OF TWO OFFICERS

### A. *Mootness*

In the instant case, the plaintiff requested from the defendants the names of the two Troy police officers who were involved in the shooting of David Prior. In addition, the plaintiff requested the incident reports made by the two police officers. The record shows that these requests were denied. Several weeks after the trial court affirmed the defendants' denial, the Oakland County Prosecutor released a document to the public entitled "Inves-

tigation Concerning the Homicide of David Prior" which exonerated the two officers from criminal liability for the Prior homicide. In that report, all references to the officer who had shot Mr. Prior were blanked out. Moreover, the requested reports were not released with the prosecutor's report. Finally, at oral argument it was revealed that the requested reports have never been released by the defendants to plaintiff even though a civil lawsuit was filed and won against the defendants by the heirs of David Prior in federal court.[19] In addition, the plaintiff was not sure that the reports were disclosed during the civil trial.[20]

While the parties have assumed that the issues

---

[19] The following dialogue took place at oral argument:

"*Justice LEVIN:* I have a question. Attached to, as an appendix to the city's brief there is a report, called 'Report on Homicide Investigation'. And there are some blanked out, apparently blanked out words. Is there a reason why they're blanked out?

"*Mr. Rassel:* I don't know why they were blanked out, your Honor. I believe, however, my guess is, they would reveal the identity of the two officers involved. On September 24, some 2-1/2 weeks after the hearing in question, the prosecutor did in fact conclude that there was no reason to prosecute the two officers involved, and issued the 24-page report which is at the back of appellee's brief, City of Troy's brief. Notably the identity of the two officers involved is not in that report. It is specifically withheld. And notably the two incident reports sought by The Evening News Association are not included, not even the nonexempt portions. They have never been revealed.

"*Justice LEVIN:* That was my second question. At no time have those incident reports been disclosed?

"*Mr. Rassel:* Not to The Evening News Association. Now I do understand, your Honor, it's represented in appellant's brief, there was a subsequent civil trial in federal court in Detroit in 1981 in which the two officers and the City of Troy were found liable for negligently shooting this person. I think a civil rights violation actually was the theory under which the case proceeded. And it was a $5-1/2 million judgment against the officers and the City of Troy. It is represented in the brief that in fact the incident reports and the identity of the officers were revealed during that civil trial, but I cannot guarantee that that was the case. But they never were released to us. They were never released as part of the prosecutor's report.

"*Justice LEVIN:* Thank you."

[20] See fn 19.

in the case at bar fall within an exception to the mootness doctrine which allows further review,[21] our analysis of the record indicates that there is an ongoing dispute between the parties. The requested information has never been released by the defendants to the plaintiff pursuant to its FOIA request. In addition, the record is unclear whether the information was ever released by the

---

[21] The plaintiff wrote the following footnote in its brief:

"(2) Although the events underlying this appeal occurred some 2-1/2 years ago, the issues are not moot because the abuse here is capable of repetition. Indeed repetition is invited by the Court of Appeals opinion. See: *Nebraska Press Ass'n v Stuart,* 427 US 539, 546; 96 S Ct 2791; 49 L Ed 2d 683 (1976):

" 'The order at issue in this case expired by its own terms when the jury was impaneled on January 7, 1976. There were no restraints on publication once the jury was selected, and there are now no restrictions on what may be spoken or written about *[State v Simants,* 194 Neb 783; 236 NW2d 794 (1975)]. Intervenor Simants argues that for this reason the case is moot.

" 'Our jurisdiction under Art III, § 2 of the Constitution extends only to actual cases and controversies. *Indianapolis School Comm'rs v Jacobs,* 420 US 128; 95 S Ct 846; 43 L Ed 2d 74 (1975); *Sosna v Iowa,* 419 US 393, 397-403; 95 S Ct 553; 42 L Ed 2d 532 (1975). The Court has recognized, however, that jurisdiction is not necessarily defeated simply because the order attacked has expired, if the underlying dispute between the parties is one "capable of repetition, yet evading review." *Southern Pacific Terminal Co v ICC,* 219 US 498, 515; 31 S Ct 279; 55 L Ed 310 (1911).

" 'The controversy between the parties to this case is "capable of repetition" in two senses. First, if Simants' conviction is reversed by the Nebraska Supreme Court and a new trial ordered, the District Court may enter another restrictive order to prevent a resurgence of prejudicial publicity before Simants' retrial. Second, the State of Nebraska is a party to this case; the Nebraska Supreme Court's decision authorizes state prosecutors to seek restrictive orders in appropriate cases. The dispute between the State and the petitioners who cover events throughout the State is thus "capable of repetition." Yet, if we decline to address the issues in this case on grounds of mootness, the dispute will evade review, or at least considered plenary review in this Court, since these orders are by nature short-lived. See, *e.g., Weinstein v Bradford,* 423 US 147; 96 S Ct 347; 46 L Ed 2d 350 (1975); *Sosna v Iowa, supra; Roe v Wade,* 410 US 113, 125; 93 S Ct 705; 35 L Ed 2d 147 (1973); *Moore v Ogilvie,* 394 US 814, 816; 89 S Ct 1493; 23 L Ed 2d 1 (1969); *Carroll v Princess Anne,* 393 US 175, 178-179; 89 S Ct 347; 21 L Ed 2d 325 (1968). We therefore conclude that this case is not moot, and proceed to the merits.'

"See also: *Richmond Newspapers, Inc v Virginia,* 448 US 555, 563; 100 S Ct 2814; 65 L Ed 2d 973 (1979)."

defendant to the public. Thus, we have an actual case and controversy which allows us to examine the information sought and the statutory procedures used by the trial judge.

B. *Interference*

In addressing whether the disclosure of specific information would interfere with law enforcement proceedings under the federal FOIA, the federal courts generally have stated that "interference" can encompass a wide range of concerns. The grounds which have prevented disclosure are the following:

"(1) evidence, (2) witnesses, (3) prospective testimony, (4) the reliance placed by the government upon the evidence, (5) the transactions being investigated, (6) the direction of the investigation, (7) government strategy, (8) confidential informants, (9) the scope and limits of the government's investigation, (10) prospective new defendants, (11) materials protected by the Jencks Act [18 USC 3500], (12) attorney work product, (13) the methods of surveillance, (14) subjects of surveillance. *Kanter v Internal Revenue Service,* 433 F Supp 812, 822, fn 18 (ND Ill, 1977). See *New England Medical Center Hospital v NLRB,* 548 F2d 377 (CA 1, 1976); *National Public Radio v Bell,* 431 F Supp 509 (D DC, 1977); *Electric-Flex Co v NLRB,* 412 F Supp 698 (ND Ill, 1976)." *Docal v Bennsinger,* 543 F Supp 38, 44, fn 12 (MD Pa, 1981).

Furthermore, in considering these factors, if we must look to the evidence presented at the hearing, we find no adequate justification of the exemption. The defendants introduced testimony which indicated that several nonthreatening calls, criticizing the two officers, were received by the defendants after the homicide. There was also testimony that release of this information would be unfair to the police officers if they were properly exonerated

from the homicide. This threat alone does not meet the defendants' burden under the act. Critical public reaction is not interference with law enforcement proceedings. However, even if this evidence did indicate that direct harm to the officers would have resulted if their identities were made known, the trial court did not recognize that argument. Furthermore, public praise and criticism is part of the democratic process that FOIA seeks to promote. In addition, the evidence indicated that the City of Troy and the Oakland County Prosecutor's Office had disclosed in the past information similar to that sought in the instant case. Regarding the disclosure of names before a formal complaint is made, the FOIA does not recognize this argument. In short, we hold that the evidence presented did not sustain defendants' burden to sustain denial of disclosure of the identities of the two officers involved in the David Prior homicide.

### III. Statutory Duty to Separate

MCL 15.244(1); MSA 4.1801(14)(1) affirmatively requires that a "public body *shall* separate the exempt and nonexempt material and make the nonexempt material available for examination and copying" (emphasis added). In addition to this duty, the act places the burden on the public body to sustain its denial. MCL 15.240(1); MSA 4.1801(10)(1). The former provision ensures that the public body will be able to sustain its denial with particularized reasons.

In the instant case, the defendants made no effort to separate exempt material from that which was nonexempt. In fact, the defendants' main witness, Oakland County Assistant Prosecutor Richard Thompson, reluctantly and vaguely con-

ceded that the generic exemption raised by the defendants did not blanket all information contained in the two incident reports.[22] Thus, the trial court and Court of Appeals erred in holding that the defendants had met their statutory burden to sustain their denial where the defendants failed to separate admittedly nonexempt material contained in the two incident reports.

## IV. FOIA PROCEDURES

As we reach the point of ordering remand, we are compelled to contemplate, as other appellate courts before us, the inherent difficulties of procedure under the FOIA. Congress and state legislatures have expressed a clear intention that government records be made readily available to the public, because the proper functioning of government and public control of government in a democracy require that the people have full access to public information. Legislative bodies have recognized the necessity of limited practical exemptions from the general rule of disclosure and have attempted to define the standards under which such

---

[22] The following dialogue took place on recross-examination between plaintiff and defendants' main witness, Richard Thompson, an Oakland County prosecutor:

"Q. You indicate that in your opinion the disclosure of this information would interfere with ongoing criminal proceedings?

"A. Yes.

"Q. Is that opinion with reference to every item contained in the incident report? As I recall, and we don't—it's not here, but we were dealing with a document that was perhaps half an inch thick. Is that opinion of yours applicable to every piece of information contained in the incident report?

"A. No.

"Q. So there are some things about—with respect to which—that opinion would not apply?

"A. Things that have already been made public, yes.

"Q. Well, there are—there is—information contained in that incident report with respect to which your opinion would not apply?

"A. Yes."

exemptions may be claimed. These legislative specifications are probably as clear as the situation permits, but that does not make them either clearly or easily self-executing. There are inherent problems.

Where one party is cognizant of the subject matter of litigation and the other is not, the normal common-law tradition of adversarial resolution of matters is decidedly hampered, if not brought to a complete impasse. If one adds to this the natural tendency of bureaucracies to protect themselves by revealing no more information than they absolutely have to, it is clear that disclosure becomes neither automatic nor functionally obtainable through traditional methods.

The practical aspect of the matter is adverted to in *Vaughn v Rosen,* 157 US App DC 340, 344-345; 484 F2d 820 (1973). This is how that court saw the matter:

"This lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution. Ordinarily, the facts relevant to a dispute are more or less equally available to adverse parties. In a case arising under the FOIA this is not true, as we have noted, and hence the typical process of dispute resolution is impossible. In an effort to compensate, the trial court, as the trier of fact, may and often does examine the document *in camera* to determine whether the Government has properly characterized the information as exempt. Such an examination, however, may be very burdensome, and is necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure. * * *

"The problem is compounded at the appellate level. In reviewing a determination of exemption, an appellate court must consider the appropriateness of a trial court's characterization of the factual nature of the information. Frequently trial courts' holdings in FOIA

cases are stated in very conclusory terms, saying simply that the information falls under one or another of the exemptions to the Act. An appellate court, like the trial court, is completely without the controverting illumination that would ordinarily accompany a request to review a lower court's factual determination; it must conduct its own investigation into the document."

See *Ray v Turner,* 190 US App DC 290, 307; 587 F2d 1187 (1978).

Under these circumstances the courts are challenged to find some way to compensate the inherent problems of (1) only the government knowing what is in the requested documents, (2) the natural reluctance of the government to reveal anything it does not have to, and (3) the fact that courts normally look to two equally situated adversarial parties to focus and illuminate the facts and the law. The longer federal FOIA experience indicates that federal appellate courts have struggled with the problem and have reached some conclusions worthy of our consideration and adoption.

In reviewing this challenge, the *Vaughn* court had this to say:

"The simple fact is that existing customary *procedures* foster inefficiency and create a situation in which the Government need only carry its burden of proof against a party that is effectively helpless and a court system that is never designed to act in an adversary capacity. It is vital that some process be formulated that will (1) assure that a party's right to information is not submerged beneath governmental obfuscation and mischaracterization, and (2) permit the court system effectively and efficiently to evaluate the factual nature of disputed information. To possible ways of achieving this goal we now turn our attention." (Emphasis added.) 157 US App DC 346.

From these premises, it would appear that the

following three-step procedure should be followed by Michigan trial courts:

1. The court should receive a complete particularized justification as set forth in the six rules above (Part IC); or

2. the court should conduct a hearing *in camera* based on *de novo* review to determine whether complete particularized justification pursuant to the six rules exists, *Vaughn v Rosen, supra,* pp 346-348; *Ray v Turner, supra,* p 311; or

3. the court can consider "allowing plaintiff's counsel to have access to the contested documents *in camera* under special agreement 'whenever possible' ". *Ray v Turner, supra,* p 308, fn 24, and p 315.

The objective, of course, is to secure disclosure of all pertinent information that is not exempt. If the government and the court are mutually aware of the six rules and the government is prepared to act accordingly, the matter should normally be resolved under the first step. Where the government for whatever reason is reluctant or antagonistic, or the court is in doubt, the trial court may have to proceed to the second step. If the matter is relatively clear and not too complex, the court, or the court with a master, may, within acceptable expenditure of judicial energy, be able to resolve the matter *in camera.* However, if the matter is not that clear or simple, the court may have to consider employment of plaintiff's counsel under special agreement in order to resolve the matter. The stakes are too high to do otherwise. Judge J. Skelly Wright referred to the following words of James Madison to make that point:

" 'Knowledge will forever govern ignorance, and a people who mean to be their own governors, must arm

themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both.' " *Ray v Turner, supra,* p 304, fn 10 (Wright, J., *concurring).*

## V. CONCLUSION

The basic issue is whether at the time the plaintiff, The Evening News Association, requested the identities of two police officers and their incident reports describing the David Prior homicide, the defendants, the City of Troy and its police chief, properly withheld such information on the basis of the conclusory statement in the language of the statute that such information would "interfere with law enforcement proceedings", and that such information "would indeed have a chilling effect on the investigation".

We hold first that the trial court erred in its generic determination that the defendants had met their statutory burden to sustain their claim of exemption where it was only alleged that disclosure would "[i]nterfere with law enforcement proceedings" or "would indeed have a chilling effect on the investigation". MCL 15.243(1)(b)(i); MSA 4.1801(13)(1)(b)(i).

We hold second that the trial court erred in concluding that the defendants had met their statutory burden to sustain their denial where the requested documents contained material which was admittedly subject to disclosure.

We note that the defendants in their brief have conceded that the investigation is closed. The documents at issue must therefore be released. However, where an investigation is still "open" or in future cases, the three-step procedure adopted

herein should be applied by trial courts in determining FOIA exemptions.

The judgments of the Oakland Circuit Court and the Court of Appeals are reversed. The matter is remanded to the trial court for further proceedings consistent with our opinion.[23]

KAVANAGH, LEVIN, RYAN, and BRICKLEY, JJ., concurred with WILLIAMS, C.J.

CAVANAGH and BOYLE, JJ., took no part in the decision of this case.

## APPENDIX

### THE OAKLAND CIRCUIT COURT OPINION

*"The Court:* This is a case instituted by the plaintiff, Evening News Association, against the defendants City of Troy and John T. Donovan, Chief of Police for the City of Troy, in which the plaintiff requests information under the Freedom of Information Act adopted by the State of Michigan, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* Plaintiff is seeking information relative to the shooting of one David Prior on or about July 31, 1979, in the City of Troy. The plaintiff has been refused any information whatsoever, including the names of the initial two officers involved in the shooting, by the City of Troy, the police department, and the prosecutor's office which is currently involved in the main investigation of the matter.

---

[23] In the instant case, the plaintiff requests that it be awarded attorney fees and that this Court assess punitive damages in the amount of $500 against the defendants pursuant to MCL 15.240(4), (5); MSA 4.1801(10)(4), (5). On remand, the trial court should also consider the propriety of awarding attorney fees and granting punitive damages against the defendants.

"Now the Freedom of Information Act states that it is a public policy of this state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees. It ends with stating that the people shall be informed so they may fully participate in the democratic process.

"Plaintiff claims, in effect, that the people cannot really participate unless the news they get is fresh and not stale and that it's been more than a month since they first requested this information from the defendants.

"There are certain exemptions to the Freedom of Information Act which have been discussed at length as cited under MCL 15.243; MSA 4.1801(13). The defendants claim that these exemptions apply to them, specifically: interference with law enforcement proceedings, unwarranted invasion of personal privacy, disclosure of confidential sources, disclosure of law enforcement investigative techniques or procedures, and possible endangerment of physical safety of law enforcement personnel such as the two officers involved. These are primarily the exemptions as claimed, and it is up to the court to weigh and decide whether the exemptions claimed are indeed properly claimed by the defendants.

"It was the testimony of Mr. Thompson, the Chief Assistant Prosecutor, that they are now engaged in an ongoing criminal investigation, that to disclose any information whatsoever, information requested by the plaintiff, namely the reports filled out by the responding officers, would indeed jeopardize their investigation and interfere with the law enforcement proceedings in that regard. That they have certain information given to them

confidentially, although it may not be stated to be confidential, it's their feeling—that is, the prosecutor's feeling—that the information was given to them by witnesses who gave it only on the condition that the information would be kept confidential.

"Also, it was the testimony of Mr. Thompson that there have been a lot of negative comments made regarding the police force in Troy which is buttressed by the testimony of a cadet police officer and another police officer—a lot of negative comment regarding this particular shooting as pertains to the police force of Troy.

"The prosecutor claims that any revelation now of the names and reports made by the responding officers would indeed have a chilling effect on the investigation which has taken longer than anticipated, but some things have come up which have to be checked for statements which did not quite align themselves with prior statements made by some to the witnesses. Generally, that was the testimony of Mr. Thompson.

"The plaintiff, on the other hand, claims that the exemptions as claimed under the Freedom of Information Act do not really apply to this specific situation as they were promulgated and established primarily to apply to investigations involving 'narc' type officers engaged in secret identities where, obviously, disclosure of their names would endanger their life. Again, the plaintiff states that it doesn't want all the files, just the reports of the responding officers, which therefore should not endanger or jeopardize the finalization and completion of the investigation.

"Admittedly this is a close case, but the court, in weighing one litigant against the other with the public interest, is of the opinion that the public

interest is best served at this time by denying the plaintiff the relief that it requests.

"The only possible prejudice to the public that the court can see at this stage is that the news, when it is obtained, will indeed be stale news. The court finds that enough has been educed from the testimony of the prosecutor's witness, Mr. Thompson, and the officers that the investigation could indeed well be jeopardized by providing to the plaintiff the information that it seeks at this time. It would be very difficult to screen out names of witnesses which the responding officers may have noted which would be subject to providing testimony or being researched by the press which could conceivably result in conflicting statements and further hamper the investigation; also, piecemeal, partial statements in the press could, conceivably, inflame the public further than it has already been inflamed.

"It is the decision of the court, accordingly, that the request of the plaintiff be denied.

*"Mr. Wolanin:* Thank you, your Honor.

*"Mr. Lyons:* Thank you, your Honor.

*"Mr. Stewart:* Your Honor, if I may, does the court wish its opinion to reflect that the court has reviewed this entire file *in camera* and that its conclusion applies to the whole file?

*"The Court:* The court has reviewed the file briefly, and the court does not feel that either the names or the entire file should be made available at this time.

*"Mr. Stewart:* Second question, your Honor, will you certify this?

*"The Court:* Any objection?

*"Mr. Lyons:* No objection.

*"The Court:* It will be certified.

*"Mr. Stewart:* Thank you, your Honor.

*"Mr. Wolanin:* Thank you, your Honor."

ORDER OF THE OAKLAND CIRCUIT COURT

"Plaintiff's motion for an order to show cause why the City of Troy should not produce certain incident reports prepared by the City of Troy Police Department, having come on for hearing and testimony having been taken;

"Now, therefore, it is ordered, that for the reasons set forth in this court's bench opinion of this date, the requested reports are exempt under the Freedom of Information Act and need not be produced.

"It is further ordered that this order is certified pursuant to GCR 1963, 806.3(1)(ii).

"/s/ *Robert L. Templin*
Circuit Judge"