KEY v TOWNSHIP OF PAW PAW

Docket No. 240760. Submitted December 4, 2002, at Grand Rapids. Decided December 20, 2002, at 9:40 A.M.

Beatrice Key brought an action in the Van Buren Circuit Court against the Township of Paw Paw, alleging violations of the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* The court, William C. Buhl, J., granted summary disposition in favor of the defendant, finding that the defendant's response to the plaintiff's request under the FOIA complied with the act and that certain mathematical errors of the defendant in calculating the copy fees did not constitute an arbitrary and capricious policy regarding FOIA copy fees. The plaintiff appealed.

The Court of Appeals *held*:

1. The response the plaintiff received from the defendant complied with the statute. The request for the records was denied, with the reason for the denial stated in the response.

2. The defendant's response was timely. Where, as here, a public body timely claims the additional ten business days for a response, as provided in MCL 15.235(2)(d), the new response deadline is fifteen business days after the receipt of the request, regardless of when the notice of extension is issued.

3. The term "business day" for purposes of calculating the response deadline means, at a minimum, Monday through Friday, and not Saturday, Sunday, or a legal holiday.

4. The court properly found the mathematical errors concerning the copy fees did not constitute an arbitrary and capricious policy regarding the fees.

Affirmed.

RECORDS — FREEDOM OF INFORMATION ACT — RESPONSE PERIOD — EXTENSIONS.

A public body that timely issues a notice extending for ten business days the period within which it shall respond to a request under the Freedom of Information Act has a new response deadline that is fifteen business days after the request was received, regardless of when the notice of extension is issued; the term "business day" for purposes of such calculations means, at a minimum, Monday

through Friday, and not Saturday, Sunday, or a legal holiday (MCL 15.235[2][d]).

*David H. Hunt* for the plaintiff.

*Nelson, Kreuger & Schrotenboer, P.C.* (by *James R. Nelson*), and *Mark A. Manning* for the defendant.

Before: SAWYER, P.J., and GAGE and TALBOT, JJ.

SAWYER, P.J. Plaintiff appeals from an order of the circuit court granting summary disposition to defendant on plaintiff's claim under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* We affirm.

Plaintiff unsuccessfully sought election in 2000 to the position of trustee for defendant township. Thereafter, she filed a request under the FOIA for records of the election assistants, specifically requesting copies of the oaths taken by any assistants.[1] Ironically, the request was handled by the newly elected township clerk, who was plaintiff's daughter, Marlene Peasley. Peasley first claimed a ten-day extension in which to respond to the request because she was unable to locate the information. Thereafter, she sent another letter, indicating that she was unable to locate the requested information. This response prompted plaintiff to file the instant action.

In addition to seeking disclosure of the information relating to the 2000 election, which Peasley did not provide, plaintiff's complaint also challenged the fees she was charged for documents received under other FOIA requests to defendant. Following discovery, defendant moved for summary disposition, which was granted.

---

[1] The election assistants are authorized to accept absentee ballots.

Plaintiff first argues that the trial court erred in concluding that defendant's response to the FOIA request for the election information complied with the statute. We disagree. Plaintiff argues that defendant failed to comply with the statute because the response given by Peasley on December 22, 2000, did not provide the information or deny the request (or do both in part). Defendant's brief on appeal quotes from Peasley's December 22 letter as follows: "I . . . have been unable, at this juncture, to locate the documents . . . . The requested may not have been created or . . . misfiled . . . . In the event they are located, I will transmit them to you." Plaintiff argues that this response fails to comply with the statute because it neither grants nor denies the request. However, plaintiff's quotation from the letter leaves out some key information. The second and third paragraphs of the December 22 letter read in full as follows:

> I have reviewed the Township's records and have been unable, at this juncture, to locate the documents you have requested. Accordingly *your request must be denied.*
>
> The requested may not have been created or have been misfiled or at this juncture have not been located. I am making inquiry to the former Township Deputy Clerk to see if she can shed some light on this matter. In the event they are located, I will transmit them to you. [Emphasis added.]

Clearly, defendant denied the request because it did not possess the record requested. The fact that the clerk gratuitously added that she would forward the record if she ever came into possession of it does not change the fact that the request was, in fact, denied. Therefore, defendant did comply with the statute: the request was denied, with the reason for the denial stated in the response.

Moreover, the case that plaintiff claims is "on all fours" with the case at bar, *Hartzell v Mayville Community School Dist*, 183 Mich App 782; 455 NW2d 411 (1990), is different in one very important respect: the defendant in *Hartzell* never responded to the FOIA request. *Id.* at 784. It was not until after the plaintiff sued that the defendant stated that the document did not exist. *Id.* In the case at bar, the township did respond and did state that the township did not have the requested record. The township clerk merely added that she did not know whether that was because the record never existed or because it had been lost. The point in *Hartzell* was that the governmental body should not remain silent when it knows that a record does not exist and force a citizen to sue to discover that the record does not exist. *Id.* at 787. In the case at bar, plaintiff was informed exactly of the status of the requested record: it could not be located in township records.

Plaintiff next argues that the township's December 22 response to plaintiff's FOIA request on December 1 was untimely. We disagree. MCL 15.235(2) requires that a response to an FOIA request be made within five business days after receipt of the request. However, MCL 15.235(2)(d) provides that the public body may issue "a notice extending for not more than 10 business days the period during which the public body shall respond to the request." Plaintiff argues that the ten-day extension must be measured from the date the extension is made, not from the end of the original five-day period. Defendant, on the other hand, argues that the extension must be measured from the end of the original five-day period and that "business

day" should mean the days in which the township office is actually open for business.[2]

Defendant issued the ten-day extension on December 6. Plaintiff argues that the new response deadline should be measured from that date, even though a response was not yet due. However, we agree with defendant that the new deadline was ten business days after the original response deadline, not ten days after the original response extending the deadline. MCL 15.235(2)(d) provides that the public body may extend the period for responding by ten business days. The statute does not provide that a public body may extend the deadline for a period of ten business days after the initial response extending the deadline. The statute is clear and unambiguous: the extension provides an additional ten days to the whole response period. Further, we see no logical reason why the new deadline should be measured from the date the initial response is given. That is, if on the second day of the initial five-day response period the public body realizes that it will not be able to respond within the five-day period, why should it have to wait until the fifth day to issue the extension in order to have the advantage of the full fifteen-day response period (the original five plus the additional ten)? It would seem logical and prudent for the public body to issue the extension on that second day, without being effectively penalized three days for issuing the extension early.

Accordingly, we conclude that, where a public body timely claims the additional ten business days for a

---

[2] Apparently, the Paw Paw Township office is open only on Monday, Wednesday, and Friday.

response as provided in MCL 15.235(2)(d), the new response deadline is fifteen business days after the receipt of the request, regardless of when the notice of extension is issued.

In the case at bar, plaintiff made her request on December 1. Accepting, as did the trial court, Monday through Friday as being "business days," the initial response deadline was December 8. With the extension, which was claimed on December 6, the new deadline was December 22, the date of defendant's response. Therefore, the response was timely. Plaintiff, however, argues that Saturday should also be accepted as a "business day" and, therefore, the response was still untimely.

The FOIA does not define the term "business day." Nor were we able to find a definition in either Black's Law Dictionary or *Random House Webster's College Dictionary*. Plaintiff merely argues that while it is reasonable to include Monday through Friday in the definition of "business day," it is also reasonable to include Saturday because, plaintiff asserts without authority, banks include Saturday as a business day in their contracts. Defendant, on the other hand, argues that we should count only the days the township office is actually open for business.

Defendant's position does have some merit. It would give the public five actual working days to comply with the request (fifteen if extended) and it could be argued that the Legislature did not define "business day" because what constitutes a "business day" would vary with the public body involved. For example, if a governmental agency were open for business on a Saturday, then Saturday would be regarded as a business day for that agency and, if the agency is

closed on Tuesdays, as is the case here, then Tuesday would not count as a business day. However, there are some shortcomings in this argument. First, as plaintiff points out, it would give agencies with an abbreviated workweek an unduly long time to reply. For example, in this case, under defendant's definition, defendant could have taken five calendar weeks to respond. Furthermore, had the Legislature intended "business day" to mean a day in which the agency was actually open for business, it could have provided such a definition in the statute without resorting to identifying specific days of the week.

In any event, we do not believe we need determine whether defendant's proposed definition is reasonable. We believe that, at a minimum, "business day" means Monday through Friday, and not Saturday or Sunday (or a legal holiday). Under this definition of "business day," defendant's response was timely. We will leave it for another case to determine if "business day" should exclude days (Monday through Friday) in which the governmental agency is not open for business. As for counting Saturdays, for reasons to be explained below, we believe that Saturdays should be excluded.

First, we turn to the general rules of statutory interpretation provided by the Legislature. In MCL 8.6, the Legislature instructs on how to count days under statutory periods:

> This section applies to the statutes and administrative rules. In computing a period of days, the first day is excluded and the last day is included. If the last day of any period or a fixed or final day is a Saturday, Sunday or legal holiday, the period or day is extended to include the next day which is not a Saturday, Sunday or legal holiday.

Although this statute does not define "business day," we find it instructive nonetheless. While it suggests that Saturdays and Sundays are to be counted, it also indicates that a period cannot end on a Saturday or a Sunday, reflecting that neither of those days is regarded as a "business day." Furthermore, there are statutes that define "business day" and they consistently exclude Saturdays and Sundays (and legal holidays for that matter).

Under a subsection of the state construction code, MCL 125.1502(1)(h), "business day" is defined as "a day of the year, exclusive of a Saturday, Sunday, or legal holiday." A subsection of the Michigan Election Law, MCL 168.2(a), defines "business day" as "a day that is not a Saturday, Sunday, or legal holiday." Under a subsection of the home solicitation sales statute, MCL 445.111(c), "business day" is defined as "Monday through Friday and does not include Saturday, Sunday," or certain listed business holidays. "Business day" under a subsection of the Condominium Act, MCL 559.103(6), is defined as "a day of the year excluding a Saturday, Sunday, or legal holiday." In fact, we are not aware of any statute under which the Legislature regards a Saturday or a Sunday as being a business day.

In sum, while many business are in fact open on Saturdays (and even Sundays for that matter), the Legislature consistently defines "business day" as Monday through Friday, excluding legal holidays. While we might include Saturday as a business day under the FOIA if the public body were open for business on Saturdays, that is not the case here and, therefore, we need not resolve that question. Furthermore, we need not determine if days (Monday

through Friday) on which the office is closed should be excluded because defendant's response in the case at bar is timely even if we count the Tuesdays and Thursdays on which it is closed.

Finally, plaintiff argues that the township charges an arbitrary and capricious amount for copies in violation of the FOIA. Defendant responds that it has a fixed policy—fifty cents a page plus a labor charge based on the lowest paid clerical employee in the office—and that any variation was due to a miscalculation of the fee due, which ultimately inured to plaintiff's benefit. At issue are two documents. For one, defendant concedes that plaintiff may have been overcharged $3.50 if plaintiff's page count is correct and the one used by defendant to calculate the charge is incorrect. For the other, a wider discrepancy in the page count exists and plaintiff was undercharged $73.50. We agree with the trial court that mathematical errors do not constitute an arbitrary and capricious policy regarding FOIA copy fees and plaintiff has made no showing that the discrepancies are due to anything other than calculation errors or, ultimately, that plaintiff was damaged by those errors.

Affirmed. Defendant may tax costs.