# STATE OF MICHIGAN

# COURT OF APPEALS

GARY WILSON,

        Plaintiff-Appellant,

v

CITY OF GROSSE POINTE PARK,

        Defendant-Appellee.

UNPUBLISHED
March 17, 2016

No. 325355
Wayne Circuit Court
LC No. 13-012975-CZ

Before: SAAD, P.J., and SAWYER and HOEKSTRA, JJ.

PER CURIAM.

Plaintiff appeals from an order of the circuit court granting judgment in favor of defendant on plaintiff's complaint under the Freedom of Information Act. MCL 15.231 *et seq.* We affirm.

Plaintiff is an attorney who was a representing a client, Graham Taitt, on a criminal matter arising out of a drunk-driving incident. In connection with his representation of the client, plaintiff made two FOIA requests for numerous items related to the incident.[1] Letter 1 specified 9 different items, though all of the items would potentially cover an unspecified number of multiple documents; that is, each item represented a category of documents rather than listing specific documents.[2] Additionally, Item 9 of Letter 1 contained 11 separate bullet points. Letter 2 contained 23 separate items, with Item 21 listing 14 subparts, labelled a through n. Many of these also were categories of potentially multiple records rather than single specific records.

Some of the requested items were relatively specific, such as the request for any Alcohol Influence Reports in Letter 1, Item 3. Other requested items were very vague, such as the request in Letter 2, Item 23 for "Any other information not specifically enumerated which the prosecution intends to produce at trial or of an inculpatory nature." A number of the requests were for information and, while the requested information may have been contained in one or

---

[1] We shall follow the practice of the trial court of referring to these requests as Letter 1 and Letter 2.

[2] For example, Letter 1, Item 3 in the first request asked for "All written notes, Alcohol Influence Reports, preliminary complaint records, and any other written document made or produced with the investigation, arrest, booking and charging of Taitt."

more documents in defendant's possession, the request did not identify any particular document. For example, Letter 2, Item 13 asked for "Names of any witnesses who observed Defendant perform any field sobriety tests."

Defendant produced a total of 11 pages of documents. It denied the remainder with the following explanation:

> Pursuant to the Act, the City has made a determination to grant your request in part. The City has redacted portions of the responsive records under Section 13(1)(d) of the Act because the disclosure of the redacted information would clearly be an unwarranted invasion of privacy. Please note that under section 3(4) of the Act, the City is not obligated to create documents in response to your request. Please also note that your request either asks for items that are not considered "public records" under section 2(e) of the Act or do not sufficiently describe the record to enable the City to locate the record.

In response to the partial denial, plaintiff filed this action in circuit court. The matter proceeded to an evidentiary hearing, after which the trial court ruled in favor of defendant as to the unproduced items. The trial court filed a lengthy written opinion. Depending on the particular item, the trial court based its ruling on (A) the documents were insufficiently described in order for defendant to find the requested item,[3] (B) the request was inapplicable because the item did exist,[4] and (C) the document did not exist and defendant was not obligated under FOIA to create a document.[5]

Plaintiff now appeals. Our standard of review in an FOIA case depends upon which aspect of the trial court's decision that we are reviewing. The trial court's legal determinations are reviewed de novo. Its factual findings are reviewed for clear error; in these matters, we must defer to the trial court's findings of fact unless we are left with a definite and firm conviction that the trial court made a mistake. And any discretionary matters are reviewed for an abuse of discretion. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471-472; 719 NW2d 19 (2006).

Plaintiff first argues that the trial court erred in dismissing his complaint because defendant had failed to comply with MCL 15.235(4). We disagree. That provision[6] provides as follows:

---

[3] Such as the above-referenced request in Letter 2, Item 23 for information that the prosecutor intends to produce at trial.

[4] For example, the request for any accident reports because no accident was involved.

[5] Such as the request for any audio or video recordings.

[6] MCL 15.235 has subsequently been amended and subsection (4) has been renumbered to be subsection (5). For sake of consistency, this opinion will use the numbering as it existed before the amendment.

A written notice denying a request for a public record in whole or in part is a public body's final determination to deny the request or portion of that request. The written notice shall contain:

(a) An explanation of the basis under this act or other statute for the determination that the public record, or portion of that public record, is exempt from disclosure, if that is the reason for denying all or a portion of the request.

(b) A certificate that the public record does not exist under the name given by the requester or by another name reasonably known to the public body, if that is the reason for denying the request or a portion of the request.

(c) A description of a public record or information on a public record that is separated or deleted pursuant to section 14, if a separation or deletion is made.

(d) A full explanation of the requesting person's right to do either of the following:

(i) Submit to the head of the public body a written appeal that specifically states the word "appeal" and identifies the reason or reasons for reversal of the disclosure denial.

(ii) Seek judicial review of the denial under section 10.

We fail to see any violation of this section. Subsections (4)(a) and (c) do not apply as defendant did not claim exemption from disclosure, nor did it separate or delete information, other than the redaction of certain personal information, of which the parties agree is not an issue in this case. As for subsection 4(b), defendant's response clearly indicates that, at least in part, the rejection of the other items was because the requested records do not exist. For this reason, plaintiff's reliance on our opinion in *Hartzell v Mayville Community Sch Dist*, 183 Mich App 782; 455 NW2d 411 (1990), is misplaced. *Hartzell* acknowledged that a public body cannot be expected to produce a record that does not exist. But the Court further stated that that does not excuse the public body from responding to the FOIA request. *Id.* at 787. But in the case at bar defendant did respond to plaintiff's requests. See *Key v Twp of Paw Paw*, 254 Mich App 508, 511; 657 NW2d 546 (2002) (distinguishing *Hartzell* on the basis that in *Hartzell* the public body never responded, while in *Key* it did).

Plaintiff makes a vague allegation that subsequent factual development suggests that at least some of these records did, in fact, exist. We are unpersuaded by this argument. First, plaintiff points to no specific evidence in the record to support this allegation beyond a general reference to Chief Hiller's testimony and defendant's subsequent attempt to claim an exemption under MCL 15.243(1)(s). Second, even if this allegation is accurate, it is irrelevant to plaintiff's argument under MCL 15.235(4). That subsection deals with what must be contained in a public body's response to the FOIA request and that response must be given within 15 business days of

-3-

receiving the request.[7] Thus, regardless what facts are ultimately developed, that does not change the fact that defendant gave its written response by the deadline and that it listed the reasons for the partial denial. Thus, MCL 15.235(4) was complied with.

Further with respect to this argument, plaintiff argues that defendant failed to produce a so-called *Vaughn* Index. The *Vaughn* Index comes from the decision in *Vaughn v Rosen*, 157 US App DC 340, 344-345; 484 F2d 820 (DC Cir, 1973). That case, however, is not applicable here. First, we note that plaintiff admits that "no case has ever held that [a] Vaughn Index should be required from a public body," but that plaintiff "hopes that this Court will take the opportunity to clarify when a Vaughn Index should be ordered." We decline to do so. In *The Evening News Ass'n v City of Troy*, 417 Mich 481; 339 NW2d 421 (1983), our Supreme Court did speak favorably of *Vaughn* and stated that it did "generally adopt" those procedures for the circuit court to use "in determining whether a requested document and the information contained therein should be withheld from disclosure under the FOIA exemptions . . . ." 417 Mich at 485. Thus, it is a tool to assist the trial court in determining whether a claimed exemption for a document is applicable. There is no support for any argument that plaintiff would be entitled to a *Vaughn* Index. And, as the trial court stated in its opinion, because it was not determining that any of the items not produced by defendant were covered by an exemption, the trial court did not need to have a *Vaughn* Index in reaching its decision.

Plaintiff's final argument with respect to this issue is that defendant violated MCL 15.235(4)(d) by failing to include in its response plaintiff's appeal rights. This issue was not addressed by the trial court, presumably because it was never raised by plaintiff in his complaint or otherwise. Accordingly, the issue is not properly before this Court. *Attorney General ex rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 659; 741 NW2d 857 (2007).

Next, plaintiff argues that the trial court erred in various factual findings. First, plaintiff argues that the trial court erroneously concluded that no in-car video or audio recordings existed. But plaintiff points to no evidence to establish that such recordings do, in fact, exist. Indeed, plaintiff's conclusion on this argument is that "there is nothing to suggest that in-car video and audio did not exist at the time of traffic stop and arrest . . . ." But plaintiff has nothing more than mere speculation that "[p]resumably, these records exist, or existed at that time . . . ." Plaintiff points to the testimony of defendant's Director of Public Safety, David Hiller, that the patrol cars were equipped with video and audio recording equipment. But Chief Hiller further testified that he did not know whether the equipment was functioning in the cars that were involved in the stop of plaintiff's client, whether the encounter was recorded, or even if it was, whether those recordings had been preserved. In fact, at one point in Chief Hiller's testimony, he indicated that such recordings are not kept. In any event, in the absence of any concrete evidence that such recordings exist, we cannot say that the trial court clearly erred in concluding that they do not. *Herald, Co*, 475 Mich at 472.

---

[7] MCL 15.235(2) requires a response within 5 business days and (2)(d) allows for a 10-day extension. In this case, defendant had requested the 10-day extension.

Plaintiff next argues that the trial court erred in concluding that the requested Datamaster logs do not exist. But, once again, plaintiff points to no evidence to establish that they do exist. Chief Hiller specifically testified that he did not have the logs requested by plaintiff, which were the monthly logs for one year prior to the date of arrest. Plaintiff's only "evidence" of their existence is that, in response to the question why the logs were not given to plaintiff, Chief Hiller responded "I have nothing" and plaintiff interpreted that response to mean that "I have no justification" rather than meaning that there were no logs. We do not share plaintiff's view that this is the only interpretation of the response nor, apparently, did the trial court.

Next, plaintiff disagrees with the trial court's conclusion that various portions of the requests insufficiently described the records sought. Plaintiff concedes that MCL 15.233(1) requires that the request "describes a public record sufficiently to enable the public body to find the public record" before the public body is required to supply the record. Plaintiff, while stating that he "readily accepted responsibility for the poorly articulated FOIA requests," also argues that he was improperly held to a higher standard because he was an attorney. While it might be expected that an attorney should be better able than most to word a request with the necessary detail, we agree that ultimately the profession of the requester is not relevant. What is relevant is whether the request was sufficiently descriptive to allow the record to be found. Therefore, we need to look at the specific requests that were denied, that the trial court found to be insufficiently described, but which plaintiff maintains were, in fact, sufficiently described. Plaintiff identifies on appeal two such sets of records.

First, plaintiff argues that his request for defendant's "policies and procedures regarding the use of notes, recordings, or other documentation that is mandated during a citizen stop and, in particular, during all phases of an investigation for an alleged OWI stop and arrest." The trial court ruled against plaintiff on this request, along with several others, opining as follows:

> [These requests] were unclear on their face and/or were not sufficiently descriptive for the City to locate documents and/or were vague and ambiguous. It was not incumbent upon the City to search through an unlimited number of public documents without sufficient description of a public record to allow the public body to find the public record sought. Nor is the City required to create a public record in response to questions disguised as FOIA requests. Plaintiff was obligated to sufficiently describe the documents sought in order for the City to ascertain which documents fell within the requests. [Citations omitted.]

Plaintiff points to Chief Hiller's testimony that there was a procedure on the use of video cameras in the patrol cars. But, as the trial court pointed out at the hearing, the procedure was not mandatory and, therefore, fell outside the scope of the request, which only specified the production of policies and procedures that were mandated during a citizen stop.

The second group of records that plaintiff identifies on appeal are certain records related to the Datamaster. These are the records identified in plaintiff's Letter 2, Number 21, items h through m. The trial court ruled against plaintiff on items j through m along with the above record for being insufficiently described, while items h and i were rejected for being documents not in defendant's possession. Plaintiff argues that the trial court's conclusions are contradicted by Chief Hiller's testimony at the evidentiary hearing. We disagree. Chief Hiller was

questioned regarding the documents related to the Datamaster and the blood-alcohol test administered to plaintiff's client. His responses in some instances confirmed that some of those documents were not provided to plaintiff and in others that he did not know if they were provided, while he believed that some of the information had been supplied. With respect to the items not supplied, he indicated that he did not know why they were not supplied.

While this category perhaps represents plaintiff's strongest argument, we nevertheless cannot say that the trial court clearly erred with respect to its findings, particularly with regard to whether those records existed in defendant's possession. The police report that was supplied to plaintiff indicated that the Datamaster breath test was administered by Officer Reyes of the Harper Woods Police Department. This raises to us the question whether any records related to the Datamaster were, in fact, in defendant's possession. Absent evidence that this information was in defendant's possession, rather than with the Harper Woods Police Department, we are not prepared to say that the trial court clearly erred in its findings.

Plaintiff's next argument relates to whether certain records were exempt under MCL 15.243(1)(s) as defendant had argued at one point in the lower court proceedings. But, as plaintiff himself observes in his brief, this point is moot because the trial court never based any portion of its ruling on any of the requested items being exempt.

Plaintiff next argues that the trial court erred in failing to award costs, punitive sanctions and attorney fees. But, because plaintiff did not prevail, he is not entitled to any such award. See MCL 15.240(6).

Finally, plaintiff argues that the trial court erred in dismissing Count II of the complaint, which argued that defendant charged an excessive fee for the record production. The fee charged was $5 for the first page, plus $1 for each additional page. The total fee charged to plaintiff was $15 for supplying 11 pages of documents. MCL 15.234(1) authorizes the public body to charge a fee, but "the fee shall be limited to the actual mailing costs, and to the actual incremental cost of duplication or publication including labor, the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information as provided in section 14." Given the enormity of plaintiff's request, we are not persuaded that this was an excessive fee.

Affirmed. Defendant may tax costs.

/s/ Henry William Saad
/s/ David H. Sawyer
/s/ Joel P. Hoekstra

-6-