# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH WAYNE RADFORD,

Plaintiff-Appellant,

v

MONROE COUNTY and MONROE COUNTY
SHERIFF'S DEPARTMENT,

Defendants-Appellees.

UNPUBLISHED
June 7, 2018

No. 337654
Monroe Circuit Court
LC No. 15-138008-CZ

Before: SERVITTO, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Three days after his arrest for drunk driving, Kenneth Wayne Radford requested various records from Monroe County and the Monroe County Sheriff's Department. In support of his request, Radford invoked the Freedom of Information Act. The Sheriff's Department responded that it would not produce the bulk of the requested materials because its investigation was still underway, and directed Radford to seek the rest from Monroe County Central Dispatch. Radford then filed this suit, which the circuit court summarily dismissed.

Radford's challenge to defendants' failure to produce the police report was rendered moot when defendants produced it during discovery. Moreover, the production of 911 and radio dispatch recordings cannot be compelled by this lawsuit as Radford failed to request these materials from the correct public body and did not name that body as a defendant. We affirm the summary dismissal as to those claims. However, the circuit court erred in summarily dismissing Radford's FOIA claims for production of patrol car and station house recordings related to his arrest. As the proceedings should have continued, the court prematurely awarded costs and attorney fees to defendants. We vacate the circuit court's order in those regards and remand for continued proceedings.

## I. BACKGROUND

Around midnight on March 27, 2015, Monroe County Sheriff's Deputy Motylinski arrested Kenneth Wayne Radford for drunk driving. On March 30, 2015, Radford served on the Monroe County Prosecutor's Office an "Appearance of Counsel and Demand for Discovery," requesting "preservation and production of all police reports, patrol car videos, 911 calls, and station house video capturing [Radford's] driving, detention, arrest and chemical testing on or about March 27, 2015."

-1-

Radford also served his first request under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, on the Monroe County FOIA Coordinator (Monroe County) and Sheriff's Department, along with a copy of his counsel's appearance and discovery demand. Radford captioned the request like a pleading in his criminal action. Radford sought production of the police report, "all in-car videos and audio from the patrol car of the arresting officer, Motylinski, from May 27, 2015,[1] at approximately 0000 hours, including the vehicle in motion (if applicable) through pre-arrest screening, the arrest and transport," any and all "station house video and audio of [Radford] through the time of chemical testing, including all Datamaster testing at the police station," all 911 and radio dispatch recordings related to his offense, and "all Datamaster breath tickets that were produced after [Radford] provided a breath sample. . . ."

The Sheriff's Department denied this FOIA request because "[i]t has been determined by this agency that the records you have requested is [sic] exempt from disclosure based on the provisions of the [FOIA]." More specifically, the Sheriff's Department indicated that it denied the request because "[w]e show this report to still be open under investigation. For the 911 call from dispatch you will need to request it through Monroe County Dispatch at 987 S Raisinville Rd Monroe MI." Monroe County did not separately respond.

Three months later, Radford filed suit. He challenged the Sheriff's Department's redirection of his request for 911 recordings as the FOIA request was directed to Monroe County, and the Sheriff's Department and Central Dispatch were both divisions of the same political unit. In relation to the specific items requested, Radford asserted that he was not seeking to compel production of the police report at that time and would "re-submit his request after the investigation is completed, unless factual developments establish that this claim is untrue." Radford so limited his waiver because he had information that "no investigation was ongoing at the time" of his FOIA request.

Radford alleged that the recordings from the patrol car and police station and all chemical test results were not subject to any FOIA exemption. MCL 15.243(1)(b)(*i*) exempts from FOIA disclosure "[i]nvestigating records compiled for law enforcement purposes but only to the extent that disclosure as a public record would . . . [i]nterfere with law enforcement proceedings." The recordings and test results were "not investigating records compiled for law enforcement purposes," Radford contended. Specifically, "nothing secret [was] contained in the records," "no confidential informants [were] mentioned," "no sensitive law enforcement techniques [were] revealed," and nothing in these records "could be used to compromise an ongoing law enforcement investigation." Moreover, defendants made no effort to redact any potentially exempt portions of the requested material so that the remainder could be released as required by MCL 15.243(1)(b). Accordingly, Radford asserted, he was entitled to production of these materials pursuant to his FOIA request, as well as damages and attorney fees.

Defendants retorted that the police report, station house and patrol car recordings, and chemical tests were all exempt at the time of Radford's request as the criminal investigation was then pending. Radford failed to renew his request once the investigation closed. And defendants

---

[1] Radford erroneously cited recordings from "May 27" instead of "March 27."

did not deny Radford's request for 911 and dispatch recordings as they simply redirected Radford to the correct records custodian.

Following discovery, defendants filed a "pretrial conference statement," emphasizing that Radford had promised to resubmit his request for the police report once the investigation closed while maintaining his belief that the investigation was not still underway. Defendants continued:

> Factual developments have not established that Defendant[s'] claimed exemption is untrue. In fact, at the time of the [FOIA] Request (March 30, 2015) the report was still under open investigation. The blood draw taken from [Radford] and submitted to the Michigan State Police Crime Lab had not yet been analyzed and returned with results.

Radford never resubmitted his FOIA request. "If he had, the requested information would have been supplied." And during discovery in the current matter, defendants did produce the previously requested "complaint." As to the sought-after 911 and dispatch recordings, defendants further noted that Radford never followed through by contacting Central Dispatch. Central Dispatch "is a separate entity with a separate Board" from the Sheriff's Department and has its own FOIA coordinator. Had Radford made a FOIA request to Central Dispatch, it would have produced the requested records, defendants asserted.

Defendants subsequently filed a motion for summary disposition of Radford's FOIA action pursuant to MCR 2.116(C)(8) and (10). Defendants repeated that the matter was still under investigation when Radford submitted his FOIA request as the lab had not yet analyzed Radford's blood draw results. Defendants reiterated that Radford never followed through and requested the 911 and radio dispatch recordings from the correct agency and that the prosecutor had since released the complaint and police report during discovery. Moreover, defendants contended, no Datamaster test had been performed so no such records were available.

Defendants were entitled to withhold the requested items pursuant to the FOIA exemption in MCL 15.243(1)(b)(*i*), they argued, as the items were "[i]nvestigating records compiled for law enforcement purposes" and their release would "[i]nterfere with law enforcement proceedings." Defendants continued that whether a FOIA exemption exists is judged on the date of the request and they had no duty to follow up after the investigation was complete. In any event, the blood testing was not complete until April 8, 2015, five days after defendants' denial of Radford's FOIA request. For the first time, defendants noted the typographical error in Radford's FOIA request for recordings from the patrol car. The records could not be produced on March 30, defendants asserted, as May 27 had not yet occurred. And it was not the duty of the governmental body to ascertain which records the requesting party actually wanted.[2]

Defendants attached to their summary disposition motion a copy of Radford's blood analysis laboratory report. The report indicated that the analysis was completed on April 8,

---

[2] This error was actually brought to defendants' attention by the court at a pretrial conference.

2015, and revealed that Radford had a blood alcohol content of 0.160. With the production of this document and of the police report during discovery, Radford's only outstanding requests were for patrol car and station house recordings involving Radford and any 911 and radio dispatch recordings related to his arrest.

Radford responded that despite his typographical error, defendants were on notice of the records he sought as he referenced his pending criminal case and attached his attorney's discovery demand. Following his request, defendants never claimed confusion and given their other responses, clearly understood which recordings Radford wanted. Defendants did not deny Radford's request because it was "insufficiently described," despite that this was a selectable option on the standard FOIA response request form.

When defendants produced the police report during discovery, Radford learned that the investigation had closed on the night of his arrest.

No further investigation was contemplated at all, since this was a routine drunk driving case. Defendants do not describe any ongoing investigation in their motion or through an affidavit or otherwise to evince a continuing investigation followed the submission of the FOIA request or describe how or why release of various public records may have interfered with that fictional investigation.

Radford conceded that he had since received the police report and that no Datamaster test was performed. He complained, however, that defendants never indicated whether any patrol car or station house recordings of Radford existed.

In relation to his 911 and radio dispatch recordings request, Radford argued it was not his "obligation . . . to chase down information that the public body possesses by trying to ascertain where the public body is secreting the document." Central Dispatch was "not an independent public body," Radford insisted, and Monroe County should have presented these recordings on request. Indeed, MCL 15.233 requires that any public body employee who receives a FOIA request is required to forward the request to the FOIA coordinator. Monroe County and the Sheriff's Department were therefore required to forward the FOIA request to the Central Dispatch coordinator.

Ultimately, Radford contended, the public body bears the burden of establishing that requested documents fall within a FOIA exemption. Defendants were required to establish both that the requested items were investigating records compiled for law enforcement purposes and that their release would interfere with law enforcement proceedings. Defendants failed in both regards, Radford insisted. "When it denied the request, the only thing that remained open was the toxicology report. This is hardly relevant as to whether the investigation remained allegedly open." To justify an exemption, the public body must give a detailed and particularized description of how the release of the records would actually interfere with an open investigation. The public body is not permitted to give conclusory replies with simple repetition of the statutory language. "The mere showing of a direct relationship between records sought and an investigation is inadequate," and that is all defendants showed here. The investigation in this case was closed at the time of the request, and Radford could do nothing to interfere with the police report, blood test results, or the recordings from the patrol car or station house.

In reply, defendants cited a recent unpublished Court of Appeals opinion approving the summary dismissal of a FOIA complaint where the requesting party could have easily secured the requested information by resubmitting his FOIA request after the police investigation was complete. Citing *Whittaker v Oakland Co Sheriff*, unpublished per curiam opinion of the Court of Appeals, issued November 15, 2016 (Docket No. 329545). The Court of Appeals determined that the lawsuit "was not reasonably necessary to compel disclosure and therefore the requesting party was not entitled to recover attorney fees and costs."

The court heard the parties arguments on February 22, 2017. Defendants again argued that Radford was not entitled to production of the patrol car recordings as he listed the wrong date in the FOIA request. Second, defendants argued, the requested materials were exempt from FOIA disclosure as the blood draw results had not been completed and therefore the investigation was ongoing at the time of Radford's request. Moreover, Radford's attorney represented him in his criminal matter, was on notice when the investigation concluded, and could have resubmitted the FOIA request at that time. Defendants further explained that Central Dispatch was a separate agency with its own board and FOIA coordinator. The Sheriff's Department directed Radford to submit his request to that agency, but Radford did not do so. As Radford had not followed reasonable steps to secure the requested information, defendants contended that he was not entitled to costs and fees and that his suit should be dismissed.

Radford attempted to distinguish the current matter from various unpublished Court of Appeals cases. *Whittaker* was inapposite, Radford contended, as the public body presented every requested item during discovery, rendering the FOIA lawsuit moot. Defendants in this case never presented all the items requested. As to the erroneous date in the patrol car recording request, Radford contended that defendants were still able to identify the desired documents. This was evidenced by the fact that defendants denied the request because they claimed the investigation was still open, not because the request was unclear. Radford declared it "not true" that the investigation was still pending at the time of his FOIA request. "Yes, blood results were still being analyzed at the Michigan State Police," Radford conceded, "but that does not mean that public records become magically exempt." "At no point," Radford continued, did defendants ever explain how release of the requested public records would interfere with any ongoing investigation. Accordingly, defendants did not meet their burden of supporting their claimed exemption. Moreover, although defendants produced the police report during discovery, the patrol car and station house recordings remained outstanding.

In relation to his request for 911 and radio dispatch recordings, Radford cited MCL 15.233 as imposing a duty on Monroe County and the Sheriff's Department to forward this request to the proper agency within the Monroe County government. Radford noted that Monroe County's own electronic FOIA request policy directed individuals to send requests for dispatch records to the Sheriff's Department, belying defendants' claim that he submitted his request to the wrong agency.

In any event, Radford contended, all three recordings request were for documents that are not considered investigating records—"[T]he Courts have repeatedly held that these types of records are not exempt because they are not investigating records." They are public records that can be requested for any reason and it was irrelevant that Radford sought out these items to formulate his criminal defense.

Defendants argued that the FOIA request directions on the county's website were irrelevant as they were drafted and placed on the website pursuant to an amendment in state law after Radford made his FOIA request. At the time of the request, defendants contended, "it was totally appropriate" to redirect Radford to Central Dispatch. Further, defendants asserted, the Monroe County Prosecutor's Office has "an open discovery policy" and "each and every item requested" by Radford "either was or could have been received" through the criminal discovery process.

The circuit court granted summary disposition in defendants' favor, ruling:

> [A] person that is requesting government documents, they need to be specific in their requests. . . . [W]hen you have an offense date, which was March 26th, 2015, and you request documents . . . from some two months later, I don't know that it is a public entity's job to have to go back through all of the records and say well, he screwed up on the date and here we have to disclose this March date. I - - just don't agree with that. . . . Who knows if Mr. Radford had been charged with multiple crimes all during that period of time, would the governmental body be required to disclose every single thing that happened to him; I don't think so. I think the government was entitled to look at the May 27 day and deal with that.

The court further ruled that although "there is no question that all of the [requested] items . . . are discoverable items," they also all fell within the pending investigation exemption. The investigation was not complete until the blood test results came back as drunk driving charges would not have been filed had Radford's blood alcohol content fell below the legal limit.

In relation to the 911 and dispatch recordings, the court determined that the Sheriff's Department did not deny the request, but merely redirected Radford to Central Dispatch. The court noted its understanding that the Sheriff's Department "was separate and distinct from Central Dispatch." On the county's website, "it still says you request from the Sheriff's Office what you want from them, and Central Dispatch is separately identified even now today as the place to go as it was back then. The Sheriff's Department was not the keeper of the records for Central Dispatch." The court also did not agree that a single request to Monroe County sufficed. The county "is the funding agent," but it is not the record keeper for its various departments and agencies.

Finally, the court stated, "So too, even in the criminal case, the Prosecutor's Office does have, always did have, an open file policy. Every item was given to the defendant in this case for purposes of the defense case." Accordingly, the court could not "find a violation of the FOIA Act." The court issued an order consistent with its oral ruling on March 7, 2017. The court also ordered Radford to pay defendants' costs and attorney fees associated with their defense of this case.

Radford sought reconsideration, arguing that neither defendants nor the prosecutor provided all the requested documents, contrary to the court's order. Radford believed that any new FOIA request would "be met with further opposition and obfuscation," including likely claims that the records had been destroyed. After all, Radford noted, defendants argued

throughout this litigation that "all he had to do was ask for them" and the records would have been produced, and yet defendants still had not produced the records after two years of litigation. Defendants even failed to produce the requested documents despite their claim "that they have an open door discovery policy."

Moreover, Radford contended, there was no support for awarding defendants attorney fees and costs where Radford exercised his right under MCL 15.240(1) to court review of the public body's denial of his FOIA request. Rather, costs and attorney fees should have been charged against defendants pursuant to MCL 15.240(6) and "[t]here is no corollary right by the government."

The court found no "palpable error" and denied the motion for reconsideration. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a circuit court's summary dismissal of a FOIA action. *Herald Co v Eastern Mich Bd of Regents*, 475 Mich 463, 486; 719 NW2d 19 (2006). We consider the court's summary disposition order as granted under MCR 2.116(C)(10) as the court considered evidence beyond the initial complaint. See *Driver v Hanley (After Remand)*, 226 Mich App 558, 562; 575 NW2d 31 (1997).

> Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotation marks and citations omitted).]

We also review de novo the interpretation of FOIA's statutory provisions. *Herald Co*, 475 Mich at 486. "Whether requested information fits within an exemption from disclosure under FOIA is mixed question of fact and law and, on appeal, the trial court's factual determinations are reviewed for clear error, but its legal conclusions are reviewed de novo." *Taylor v Lansing Bd of Water & Light*, 272 Mich App 200, 205; 725 NW2d 84 (2005).

## III. ANALYSIS

### A. INVESTIGATION RECORDS

FOIA is a prodisclosure statute; the disclosure provisions are interpreted broadly, while its exemptions are construed narrowly. *Rataj v City of Romulus*, 306 Mich App 735, 748-749; 858 NW2d 116 (2014). To this end, the public body seeking to withhold requested information bears the burden of establishing that a particular exemption applies. *Id*. at 749.

As noted, defendants asserted that the police report, station house and patrol car recordings, and chemical test results were exempt from disclosure as the drunk driving investigation was still pending. The various FOIA exemptions are detailed in MCL 15.243(1), which provides, in relevant part:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:
>
> * * *
>
> (b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:
>
> (*i*) Interfere with law enforcement proceedings.

"[T]o establish the law-enforcement-proceedings exemption, [the public body must] show both that an investigation was open and ongoing and that release of the requested documents 'would' interfere with law enforcement proceedings." *King v Oakland Co Prosecutor*, 303 Mich App 222, 231; 842 NW2d 403 (2013). "[F]inding that the requested information merely 'could' hamper an investigation is insufficient to satisfy the law-enforcement-proceedings exemption under MCL 15.243(1)(b)(*i*)." *Id*. at 232. Moreover, the public body's explanation for nondisclosure, and the trial court's opinion affirming it, must "contain[] particularized justification" and cannot be "an attempted generic justification," such as " 'that they are now engaged in an ongoing criminal investigation, that to disclose any information whatsoever . . . would . . . interfere with the law enforcement proceedings in that regard.' " *Evening News Assoc v City of Troy*, 417 Mich 481, 506; 339 NW2d 421 (1983) (ellipses in original). "A bill of particulars is in order," "indicat[ing] factually how a particular document, or category of documents interferes with law enforcement proceedings." *Id*. at 503. It is "inadequate" merely to show "a direct relationship between the records sought and an investigation." *Id*.

Defendants never offered information beyond a generic justification for their claim that the investigation was ongoing on March 30. Deputy Motylinski observed Radford's erratic driving and pulled him over on March 27. Motylinski likely put Radford through field sobriety tests and made observations suggesting that Radford was intoxicated on March 27. Based on this information, Motylinski decided to arrest Radford on March 27. Once at the station, a sample of Radford's blood was taken and was sent for analysis, again on March 27.

The *court* first explained in its summary disposition judgment that defendants would not have decided whether to charge Radford with drunk driving until the blood test results came back. Therefore, in the court's estimation, all the information gathered was exempt until the test results were in.

FOIA does not permit public bodies to wait nearly two years to explain why the production of public records would have interfered with an ongoing investigation. Here, the

court had to fill in the blanks. But even the court did not explain how release of the recordings from the patrol car and station house would have interfered with the investigation.[3] Defendants do not even attempt to give the mandatory particularized explanation on appeal.[4] On this record, the circuit court improperly summarily dismissed Radford's FOIA action as to the patrol car and station house recordings based on the ongoing investigation exemption.

## B. SUFFICIENCY OF DESCRIPTION

The circuit court further determined that Radford was not entitled to disclosure because his FOIA request included a typographical error in the offense date.

MCL 15.233(1) provides, in relevant part, that "upon providing a public body's FOIA coordinator with a written request that *describes a public record sufficiently to enable the public body to find the public record*, a person has a right to inspect, copy, or receive copies of the requested public record of the public body." (Emphasis added.) This is not "an exacting standard"; the requesting party is not required to "precisely or fully" describe the items sought, but only to meet "the lesser standard of 'sufficiently' " described. *Coblentz v City of Novi*, 475 Mich 558, 572; 719 NW2d 73 (2006).

In *Coblentz*, 475 Mich at 571, the public body "never claimed, and still [did] not claim [on appeal], that it [did] not know what plaintiffs seek." The public body never claimed that the plaintiff's description was insufficient to allow it to find the requested records. *Id*. at 572.

---

[3] Radford's challenge pertaining to the police report was rendered moot by its production during discovery. *State News v Mich State Univ*, 481 Mich 692, 704 n 25; 753 NW2d 20 (2008). Contrary to the circuit court's conclusion, however, the record does not support that the patrol car and station house recordings were produced by the prosecutor in Radford's criminal matter. His challenge was not rendered moot in that regard.

[4] We find instructive this Court's opinion in *Katayama v City of Troy*, unpublished per curiam opinion of the Court of Appeals, issued December 10, 2015 (Docket No. 323459), unpub op at 3, which described an adequate explanation under remarkably similar circumstances:

> Plaintiff argues that because the case concerned his blood alcohol level, there was no ongoing investigation other than awaiting the results of his blood alcohol testing. We disagree. Defendant submitted an affidavit from the investigating officer explaining that at the time of the request, only six days after plaintiff's arrest, there were several aspects of the investigation that were not complete. The officer also averred that the investigation was not limited to whether plaintiff had been driving under the influence of alcohol because plaintiff was found in a location specifically identified by the police as one known for narcotic trafficking, prostitution, and vehicular larcenies. Under these circumstances, we agree with the trial court that declining a FOIA request made so shortly after the arrest was not improper.

Accordingly, as long as no exemption applied, the public body was required to produce the requested items. *Id*. at 573.

The same is true here. Defendants did not notice the typographical error in Radford's FOIA request. It is clear that defendants understood that Radford sought information related to his March 27, 2015 arrest, not an arrest on May 27. After all, defendants knew that the investigation was still pending on March 30 and denied Radford's request on that ground. Defendants were completely unaware of the erroneous date used in the FOIA request until pointed out by the court. It would be disingenuous for defendants to suddenly claim at that late date that they were unable to locate the requested information based on an insufficient description. We therefore vacate that portion of circuit court summary disposition order relying on the sufficiency of the FOIA request's description.

## C. REDIRECTION TO DISPATCH

We discern no error, however, in the circuit court's dismissal of Radford's claim related to the 911 and radio dispatch recordings. The current FOIA procedures available on the Monroe County website inform individuals that the Sheriff's Department and Central Dispatch are two separate public entities with separate addresses and separate FOIA coordinators. See County of Monroe, Michigan, Public Summary of FOIA Procedures and Guidelines, available at <http://www.co.monroe.mi.us/sheriff/1.County_Summary2.pdf> (accessed May 17, 2018). Central Dispatch was created by the Monroe County Board of Commissioners, but is not a creature controlled solely by Monroe County; its board includes representatives from the Michigan State Police and the county's townships, cities, and villages. See Central Dispatch, History, available at <http://www.co.monroe.mi.us/officials_and_departments/departments/central_dispatch/history.php> (accessed May 17, 2018). It "is an independent Monroe County Department serving under the Direction of the 9-1-1 District Board." Central Dispatch, available at <http://www.co.monroe.mi.us/officials_and_departments/departments/central_dispatch/index.php> (accessed May 17, 2018).

This information may not have been available on the Monroe County website on March 30, 2015. However, the Sheriff's Department responded to Radford's FOIA request and advised him that the 911 and radio dispatch recordings were compiled and controlled by Central Dispatch and had to be requested through that that department. Radford could have quickly and easily forwarded the already prepared FOIA request to Central Dispatch. Instead, Radford chose not to follow this direction and to instead file suit. The question is whether defendants remain liable for the failure to provide the information.

In *Detroit Free Press, Inc v City of Southfield*, 269 Mich App 275; 713 NW2d 28 (2005), the Free Press filed suit against the city and the City of Southfield Fire and Police Retirement System, alleging various FOIA violations. The Free Press initially requested only from the city a list of the 20 largest pension payouts and information related to the payees. *Id*. at 279. The city "informed [the Free Press] that it should have been submitted directly to defendant City of Southfield Fire and Police Retirement System's board of trustees." *Id*. The city eventually compiled and produced the requested information, but without identifying anyone by name. *Id*. at 280. The retirement system notified the Free Press "that it had been belatedly advised of the actions taken by the city. The [retirement system] explained that it objected to the city's release

of the information, and that plaintiff should send future requests for retirement information directly to the system." *Id*. The Free Press then submitted its FOIA request to the retirement system, which provided limited, redacted information identical to that provided by the city. The Free Press filed suit against the city and the retirement system to compel production of the requested information. *Id*.

Relevant to this appeal, the city contended that it was not liable under FOIA as the FOIA request should have been sent to the retirement system:

> The city also argues that it is not liable under the FOIA because it was the wrong public body to grant [the Free Press's] request and that [the Free Press] should have addressed its request to its retirement system. We disagree. [The Free Press] does not contest that the city and its retirement system are separate public bodies and that the retirement system itself may be considered a public body under the FOIA. *Detroit News v Policemen & Firemen Retirement Sys of the City of Detroit*, 252 Mich App 59, 71; 651 NW2d 127 (2002). Nevertheless, the records were "public records" that the city must disclose under the FOIA, regardless of the difference between the two entities. Although the city's letter expressed its preference that [the Free Press] direct its FOIA requests to its retirement system, there is direct evidence that the city could also produce the requested records. The city compiled a list of pension information about retired fire and police employees and provided extensive documentation about pension calculation. The city also cited an exemption rather than claiming that it lacked the ability to produce the names, and at one point, the city's retirement system stated that "the requested information was contained within the City's records." Accordingly, the city failed to demonstrate a genuine issue of fact that it lacked the ability to produce the records. [*Id*. at 288-289.]

The situation now before us is distinguishable from that in *Southfield*. Neither the Sheriff's Department nor the County FOIA coordinator "expressed [a] preference" that Radford contact Central Dispatch; rather, the Sheriff's Department directed Radford to contact Central Dispatch in the first instance. Central Dispatch is a separate entity with its own records which are not available to the Sheriff's Department; while the city of Southfield had access to the retirement system's records. Defendants never cited an exemption for the 911 and radio dispatch recordings, unlike the city of Southfield, and immediately stated that it did not have access to the records.

The remedy for defendants' inability to produce the requested recordings was to forward the request to the correct public body. If Central Dispatch cited an exemption and declined to produce the records, Radford could have named Central Dispatch as a defendant in this suit. As it stands, this suit cannot compel production of the 911 and radio dispatch recordings. We affirm the dismissal in this regard.

D. ATTORNEY FEES AND COSTS

Generally in a FOIA case we are asked to review the award or denial of fees to the requesting party. In this case, the circuit court awarded costs and fees to defendants, the public

bodies who withheld information requested under FOIA. We need not reach the merits of this issue at this time. As the circuit court improperly dismissed much of Radford's complaint, it prematurely reached the issue of costs and fees. This issue should be revisited by the lower court after resolution of the remaining claims. We therefore vacate the award of costs and fees.

We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens